THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM F. ABRAMS,

          Plaintiff,

    v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

          Defendant.

Case No. 2:21-cv-00980-TL

**PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO FRCP 52(a)**

**Noting Date: March 11, 2022**

i

**Table of Contents**

I.   Introduction ...........................................................................................1

II.  Statement of Facts ..................................................................................2

    A.  Mr. Abrams is a Highly Accomplished Attorney .......................................2

    B.  Mr. Abrams Suddenly Became Severely Ill in April 2020 .........................3

    C.  Nine Specialists Evaluated Mr. Abrams; Four Diagnosed
        ME/CFS and Three Associated his Symptoms with COVID ................................6

        1.  Infectious disease specialist Dr. Moss
            concluded that Mr. Abrams was suffering from
            an immunologic reaction or post viral syndrome .........................7

        2.  Hematologist Dr. Hegerova ruled out blood
            cancers and other disorders .........................................................7

        3.  Infectious disease specialist Dr. Goldman
            diagnosed ME/CFS ........................................................................8

        4.  Rheumatologist Dr. Simon diagnosed ME/CFS ...........................9

        5.  Neurologist Dr. Reif identified cognitive problems
            and a significant tremor and diagnosed post-viral
            syndrome, possibly COVID-related..............................................10

        6.  Pulmonologist Dr. Pappas assessed presumed
            COVID and ME/CFS ...................................................................11

        7.  Endocrinologist Dr. Szkudlińska assessed ME/CFS .................11

        8.  Sleep specialist Dr. Stolz assessed persistent
            fatigue with ME/CFS ...................................................................11

        9.  Dr. Friedly, the Executive Director of the University
            of Washington Post-COVID Clinic, assessed
            post-COVID symptoms ...............................................................11

    D.  Mr. Abrams Suffers from Cognitive Impairments................................12

    E.  Unum Denied Mr. Abrams's LTD Claim and Appeal..........................15

III.   Argument ..................................................................................................17

    A.  Mr. Abrams's Medical Record Establishes His Disability .................................17

    B.  Unum Erroneously Denied Mr. Abrams's Disability Claim ................................18

        1.  Unum ignored the record and
           did not examine Mr. Abrams ........................................................18

        2.  Unum ignored the nature of ME/CFS..........................................19

        3.  Unum ignored objective evidence of
           Mr. Abrams's daily fevers .........................................................20

        4.  Unum ignored conclusive evidence of
           Mr. Abrams's cognitive impairments ..........................................21

        5.  Unum ignored the essential duties of
           Mr. Abrams's regular occupation ...............................................22

        6.  Unum ignored the observations of six witnesses .......................23

    C.  Unum Should be Ordered to Approve and Pay Mr. Abrams's Claim ..................23

IV.   Conclusion ................................................................................................24

## Table of Authorities

**United States Supreme Court Cases**

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)............................................17

*Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 105 (2008) ...........................................23

**United States Court of Appeals Cases**

*Friedrich v. Intel Corp.*, 181 F.3d 1105 (9th Cir. 1999)....................................................20

*Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666 (9th Cir. 2011) ............................20

*Stephan v. Unum Life Ins. Co. of Am.,* 697 F.3d 917 (9th Cir. 2012)............................................15

**United States District Court Cases**

*A.A. v. Blue Cross & Blue Shield*, No. 2:13-cv-00357-RSM,
2014 U.S. Dist. LEXIS 29986 (W.D. Wash. Mar. 7, 2014) ........................................................24

*Brown v. UNUM Life Ins. Co. of Am.*, 356 F. Supp. 3d 949 (C.D. Cal. 2019)............................22

*Dykman v. Life Ins. Co. of N. Am.*, No. 3:20-cv-01547-IM,
2021 U.S. Dist. LEXIS 216616 (D. Or. Nov. 8, 2021)....................................................................23

*Gorena v. Aetna Life Ins. Co.,* No. C17-532 MJP, 2018 U.S. Dist. LEXIS 104071
(W.D. Wash. June 15, 2018).............................................................................................................19

*Kieserman v. Unum Life Ins. Co. of Am.*, No. C21-0448-JCC,
2021 U.S. Dist. LEXIS 233200 (W.D. Wash. Dec. 6, 2021)......................................................19

*Laurie v. United of Omaha Life Ins. Co.*, No. 3:14-cv-01937-YY,
2017 U.S. Dist. LEXIS 35430 (D. Or. Jan. 23, 2017) ..................................................................23

*Perryman v. Provident Life & Acc. Ins. Co.*, 690 F. Supp. 2d 917 (D. Ariz. 2010) ....................22

*Ratkovic v. Northrop Grumman Corp. Empl. Welfare Benefit Plan*,
No. CV 06-08255 MMM (JWJx), 2009 U.S. Dist. LEXIS 13862 (C.D. Cal. Feb. 20, 2009).......21

*Robertson v. Standard Ins. Co.*, 139 F. Supp. 3d 1190, 1204 (D. Or. 2015)................................21

*Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698 (C.D. Cal. 2020) ...............................19, 20

*Woolf v. Unum Life Ins. Co. of Am.*, No. 2:19-cv-07353-FLA (KSx), 2021 U.S. Dist. LEXIS
195346 (C.D. Cal. July 2, 2021) ..............................................................................................19, 22

**State Court Cases**

*Watson v. City of Seattle*, 189 Wash. 2d 149, 401 P.3d 1 (2017) .....................................................3

**Other Authorities**

29 U.S.C. § 1104 ........................................................................................................................23

29 U.S.C. § 1132(a)(1)(B) ........................................................................................................1, 24

Fed. R. Civ. Pro. 52(a) ............................................................................................................1, 24

OAR 836-010-0026 ....................................................................................................................17

WAC 284-44-015(1) ...................................................................................................................17

Article: Cleveland Clinic. 2022. Allodynia: What Is It, Types,
Causes & Treatment. [online] Available at:
https://my.clevelandclinic.org/health/symptoms/21570-
allodynia#:~:text=Allodynia%20is%20a%20type%20of,conditions
%20and%20injuries%20cause%20allodynia .................................................................................9

Article: Mayo Clinic. 2022. Chronic fatigue syndrome -
Symptoms and causes. [online]
Available at: https://www.mayoclinic.org/diseases-conditions/
chronic-fatigue-syndrome/symptoms-causes/syc-20360490 .........................................................9

Article: MoCA – Cognitive Assessment. 2022. FAQ |
MoCA - Cognitive Assessment. [online]
Available at: https://www.mocatest.org/faq/ ..............................................................................10

## I.  INTRODUCTION

Pursuant to Fed. R. Civ. Pro. 52(a), plaintiff William F. Abrams moves for judgment based upon the record for judicial review. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), on *de novo* review, Mr. Abrams seeks an order declaring that he has proved by a preponderance of the evidence that he is disabled from his "regular occupation" as a trial and appellate attorney under the terms of the Schwabe, Williamson & Wyatt, P.C. ("Schwabe") long-term disability ("LTD") policy (R. 90-132),[1] insured by Defendant ("Unum").

Mr. Abrams was an extraordinarily active trial and appellate lawyer. His clients included leading technology companies, including Google, HP, and Uber; Stanford University; Brooks Sports; and the City of Seattle in intellectual property, technology, and Constitutional matters. R. 1300, 1735-40. He has litigated pro bono and public interest cases involving wrongful conviction, death penalty, child welfare issues, education rights, asylum, and First Amendment and other Constitutional issues. He has been lead counsel in over 100 cases since 2000 and arbitrated and tried to verdict numerous cases, argued appeals in federal and state courts, and briefed cases for clients and amici in the Supreme Court. R. 1735-40 (2000-20 case list). Mr. Abrams also taught undergraduate law and policy courses at Stanford University and served on the boards of national legal organizations, including the Southern Center for Human Rights and the American Bar Association Death Penalty Representation Project. R. 201-02.

In April 2020, as the COVID pandemic was spreading, Mr. Abrams suddenly became ill with daily fevers, profound fatigue, pain, and brain fog and cognitive impairment, forcing him to stop working because he could no longer practice law, or even participate in most activities of daily life.[2] Those symptoms persisted and Mr. Abrams also developed body aches, neuropathy

---

[1] This Motion cites the pages of the record for judicial review (Dkt. #19) as "R. __."
[2] Mr. Abrams has been on an unpaid medical leave since 7/20/2020, when his FMLA leave expired, and has had to sell his house and draw on IRA/401k accounts to pay his bills. *See* R. 1639, 3803-04, 3964-65.

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 1

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

manifested in chronic hand and foot pain, worsening of migraines and increased headaches, sleep problems, worsening of a left-hand tremor, abdominal cramping, chest pain, and depression.

Mr. Abrams's initial diagnosis was Myalgic Encephalomyelitis, previously known as Chronic Fatigue Syndrome. As knowledge of COVID and research developed, treating physicians at the University of Washington and Swedish Medical Group associated his symptoms with long COVID (also known as Post-Acute COVID-19 Syndrome, or PACS). His internist, Dr. Margo Kober, affiliated with Swedish Hospital, repeatedly confirmed that he has been disabled since he left work. Her opinion is supported by the record as a whole.

Relying only on paper reviews by in-house physicians who were not specialists in ME/CFS, COVID or infectious diseases, and who never examined Mr. Abrams, Unum denied Mr. Abrams's claim and ERISA appeal. Unum ignored and rejected overwhelming evidence of his disability, including clinical findings, objective evidence of daily fevers, and the written statements of six witnesses attesting to Mr. Abrams's physical and cognitive impairments. Whether his sickness is identified as ME/CFS, post-viral syndrome, or long COVID, Mr. Abrams is profoundly ill and cannot work. Accordingly, he asks the Court to order Unum to approve and pay his LTD claim, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## II.  STATEMENT OF FACTS

### A.  Mr. Abrams is a Highly Accomplished Attorney.

Mr. Abrams, a graduate of Stanford University and the University of Santa Clara School of Law (R. 146), was a Chambers-ranked lawyer ("a wizard of the patent bar… a courageous litigator who understands both the broader picture and the social context surrounding issues." R. 201). He was recognized in *Best Lawyers,* named Lawyer of the Year by *California Lawyer*, and named a top 75 IP Lawyer in California (multiple times) and a top 100 California Lawyer. R. 1636. He was lead counsel in over 100 patent, trade secret and other IP and litigation matters

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 2

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

from 2000 until early 2020, including trials, arbitrations and appeals in federal and state courts.
R. 201. He has served as litigation counsel in defamation and First Amendment cases and has
extensive experience in Constitutional litigation in trial and appellate courts. *Id*.

Mr. Abrams has been a Consulting Professor at Stanford University since 1996, where he
taught courses in science and law, policy, and capital punishment. R. 201, 1636-37. He handled pro
bono cases in the U.S. and California Supreme Courts involving the death penalty, education, and
child welfare. R. 1735-40. Mr. Abrams has represented men on death row, trying to exonerate them
from wrongful convictions. R. 1635. He has been honored for his pro bono work, most recently
being named an Unsung Hero (1220) by the Youth Law Center, in San Francisco. R. 1636.

Mr. Abrams spent most of his career in the San Francisco Bay Area. He was the Co-Chair
of Pillsbury, Madison & Sutro's Intellectual Property Group, a Managing Partner of Bingham
McCutchen's Silicon Valley Office and the head of its IP group, a partner at King & Spalding,
and the founder and Managing Partner of Steptoe & Johnson's San Francisco Office. R. 151-52.
In 2015, Mr. Abrams represented pro bono the City of Seattle in defending its tax on gun sales
against a challenge by the NRA, winning the case in the Washington Supreme Court in 2017. *See
Watson v. City of Seattle*, 189 Wash. 2d 149, 401 P.3d 1 (2017). In early 2018, he and his wife
moved from the Bay Area to Seattle, where Mr. Abrams joined Foster Pepper. R. 151. In
September 2019, he joined Schwabe, where he led the firm's appellate practice. *Id*.

**B. Mr. Abrams Suddenly Became Severely Ill in April 2020.**

At the start of 2020, Mr. Abrams was "filled with energy and optimism for the new year"
and "in peak condition." R. 1635.[3] He was enrolled to participate in three major international
marathons during the year. *Id*. He also "looked forward to participating in the 2020 election by

---

[3] Mr. Abrams provided this description of his health and activities in his statement dated March 2, 2021 (R.
1635-40), submitted with his ERISA appeal, after Unum denied his claim.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

volunteering to help with election protection efforts in a battleground state," as he had done previously, and he and his wife "were planning to travel to see [their] son, Teddy Abrams… conduct his home orchestra, the Louisville Orchestra, throughout the year." *Id*.

Professionally, Mr. Abrams was "thriving in [his] career as a trial and appellate lawyer" at Schwabe. *Id*. He was "beginning a litigation for a major client, Brooks Sports, against Brooks Brothers" and "preparing for an argument in the Eleventh Circuit Court of Appeals in Atlanta" for his client, Jimmy Davis, Jr., who is on death row in Alabama, "trying to exonerate him from wrongful conviction. *Id*.[4] He had worked "700 hours in three months, for an average of 11.3 hours working/day." *Id*. He told Unum, "I was active, vigorous, and fully engaged in my work," adding, "In March, it looked like 2020 would be one of my strongest years." R. 1635-36.

Mr. Abrams suddenly became severely ill in April 2020. R. 1637. Because he had not yet established medical care in Seattle, he emailed Dr. Joycellen Floyd, his Bay Area internist, on April 26, stating, "I have had a low grade fever in the 99 range for a couple weeks and it's been in the 100s and 101 range since last Tuesday…this fever is wearing me out." R. 1569. On April 27, after a virtual clinical visit (R 1575-77), Dr. Floyd diagnosed, *inter alia,* "Fever, unspecified … cause," myalgia, and migraine. R 1575. On April 29, Mr. Abrams told Dr. Floyd that a COVID test had been negative but that "I still have a 100 fever and have had it for a week and am exhausted." R. 1584. She suggested he "proceed as though it [the COVID test] was positive since there is a significant false negative rate" and urged rest as "the most helpful thing we can do for any of these viral illnesses." *Id*. She urged him to "be patient!" *Id*.

---

[4] Mr. Abrams's March 2 statement included the brief filed in the Eleventh Circuit in December 2020 on Mr. Davis's behalf, "a list of my cases and my reported decisions through 2000," and "a cert petition that I wrote two years ago for a Supreme Court case that involved complex issues of Constitutional and patent law." *Id*. *See* R. 1679-1734, 1735-49, 1750-96.

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 4

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

On May 17, 2020, Mr. Abrams established care with Swedish Medical Group, reporting feeling "the sickest he's ever been. Severe fatigue." R. 1342 (PA-C Golodner). On May 18, he saw Dr. Kober, reporting fevers, abdominal cramping, and cold hands and feet. R. 599. She noted a history of major depression ("has always been present"), treated with medication, and migraine ("gets botox for this"). R. 600. She diagnosed, *inter alia*, "Fever, unspecified cause" and malaise, and noted, "has tested negative for covid but his symptoms fit this picture." R. 602.

In June 2020, Mr. Abrams told Dr. Floyd that he was "in week 7 of fevers every[] day" and "at wit's end." R. 1602. She referred him to infectious disease specialist Dr. John Boggs, who documented "fever daily since 4/20," "as high as 102.1 two days ago," "'enormously' tired, trouble[d] by brain fog, night sweats, and 'trouble catching his breath at times.'" R. 1615. Dr. Boggs assessed persistent fever, difficulty concentrating, brain fog and chronic fatigue. R. 1617.

Dr. Kober and colleagues at Swedish Medical Group documented Mr. Abrams's ongoing disabling symptoms through March 2021. For example:

- **6/24/20 (Dr. Kober)**: "He is still experiencing brain fog, trouble concentrating, very fatigued, lack of appetite...decreased energy"; "Has kept diary of fever, His temperature increases to about 100.3 or so mid afternoon, and continues in this range until evening." R. 594.

- **7/8/20 (Unum APS form)**: Dr. Kober noted fever and fatigue as "the primary diagnosis that may impact...functional capacity" (R. 45) and stated, "Patient currently unable to work due to fatigue, brain fog that does not allow him to focus, complete complex tasks. No standing to work longer than 15 minutes; he needs frequent naps." R. 46.

- **8/8/20 (Dr. Kober)**: Daily fevers continued despite a steroid trial, sleep and concentration problems, poor appetite, "pins and needles sensation in feet at night" and fatigue. *Id*.

- **8/11/20 (Dr. Kober)**: Persistent malaise and fatigue, brain fog, trouble concentrating, and fever, "around 100 but on 3-4 days per week will spike to 102." R 1370. "He is not able to work due to persistent fever/brain fog and fatigue." R. 1371.

- **9/17/20 (Dr. Kober)**: Fever, fatigue, trouble reading and finding words, fragmented sleep and drenching night sweats, disturbing vivid dreams, aching joints, abdominal cramping, loss of appetite, a metallic taste. Depression had worsened. R. 1390.

- **9/21/20 (C. Coulter, ARNP)**: "Symptoms increased over the past 2-3 days with afternoon low grade fevers, dyspnea, myalgia and palpitations with elevated HR, headache, weakness." R. 1394. Assessment: "Tachycardia", "Post viral syndrome." *Id*.

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 5

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

- **12/10/20 (Dr. Kober)**: Post viral syndrome, ME syndrome and malaise and fatigue; "Bill continues to be very symptomatic, unable to work, not able to perform many activities required in his home life as well." R. 1548. Dr. Kober prescribed provigil, "to see if that provides more stamina/energy for the day." *Id*.

- **1/20/21 (Dr. Kober):** "The lack of progress is very depressing. Unable to work. …cannot do even small household tasks, not able to read anything lengthy or with much analysis." She noted his wife's concern that "his life is drastically different…" R. 1524.

- **2/9/21 (Dr. Kober):** "Dizziness and lightheadedness from sitting to standing position," "[o]ngoing for a week," with tachycardia and shortness of breath. R. 3736.

- **2/23/21 (Dr. Kober)**: Continuing "problems with fatigue/brain fog/lack of stamina/ migraines. "[D]aytime hypersomnolence/fatigue," "cannot do any complex tasks, still not able to work." *Id*. Tachycardia with "even slightest effort…" *Id*.

- **3/10/21 (D. Barber, ARNP)**: "Severe fatigue," "sleeping 18 hours per day"; Concentration "terrible"; "Hands and feet are achy and cold"; "Unable to type on keyboard due to pain"; "very depressed about his ongoing sx..." R. 3748.

- **3/22/21 (Dr. Kober)**: "Feels…worse…does not even have the energy to shower or brush his teeth, showers once weekly, feels light headed, balance is off." R. 3756. "Still having fevers, 100.9 yesterday, still with limited appetite"; "headaches most late afternoons." *Id*.

### C. Nine Specialists Evaluated Mr. Abrams; Four Diagnosed ME/CFS and Three Associated his Symptoms with COVID.

Mr. Abrams was referred to specialists affiliated with Swedish or the University of Washington ("UW"), including infectious disease experts Drs. Gregory Moss and Jason Goldman, hematologist Dr. Livia Hegerova, rheumatologist Dr. Norman Simon, neurologist Dr. Mary Reif, pulmonologist Dr. George Pappas, endocrinologist Dr. Magdalena Anna Szkudlińska, and Dr. Janna Friedly, the Executive Director of the UW Post-COVID Rehabilitation and Recovery Clinic. These experts ordered scores of tests, scans and evaluations in seeking to diagnose and treat Mr. Abrams. Four of them diagnosed ME/CFS, as did Dr. Kober, and three associated his ongoing symptoms with presumed COVID – before data and research ascertained the condition now known as "long COVID."

/ / /

/ / /

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 6

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

**1. Infectious disease specialist Dr. Moss concluded that Mr. Abrams was suffering from an immunologic reaction or post viral syndrome.**

Dr. Moss evaluated Mr. Abrams on June 3, 2020. R. 910-13. Mr. Abrams reported fevers as high as 103.1F, chronic fatigue, achiness, headaches, brain fog, difficulty concentrating, decreased appetite/bland taste, cold hands and feet, excessive sleep (up to 18 hours per day), a left-hand tremor and back pain that had worsened recently. *Id.* Dr. Moss noted, "This sounds like a mono-like syndrome..." R. 913. He did "not think this is COVID-19 because of the duration of symptoms, type of symptoms and negative antibody testing." *Id.* He planned to "[r]epeat blood work" and asked Mr. Abrams to "please continue to make symptom diary." *Id.*

Mr. Abrams saw Dr. Moss again on September 9, with daily fevers, with spikes, night sweats, "lots of fatigue," skin sensitivity, occasional blurry vision, excessive sleep, vivid nightmares, a wobbly feeling, a worsening left hand tremor, heart palpitations, and a metallic taste. R. 1384. Dr. Moss noted, "Most infections going on this long would have worsened significantly by now" and concluded, "I think his symptom complexes may be more consistent with an immunologic reaction. Perhaps some post viral syndrome…." R. 1387.

**2. Hematologist Dr. Hegerova ruled out blood cancers and other disorders.**

On August 25, 2020, Mr. Abrams reported flu-like symptoms to Dr. Hegerova, persisting since April 20 or 21, shortness of breath, brain fog and difficulty concentrating, loss of taste, night sweats, vivid nightmares, and weight loss. R. 1430-31. She reviewed laboratory and imaging results. R. 1434-44. She had a "[l]low suspicion for underlying hematologic malignancy," but recommended a PET CT "given possibility of occult malignancy." *Id.* The CT and additional laboratory testing were negative. R. 1480, 1494. On September 11, Dr. Hegerova noted, "He is understandably frustrated at lack of diagnosis." R. 1480.

/ / /

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 7

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

### 3. Infectious disease specialist Dr. Goldman diagnosed ME/CFS.

Mr. Abrams saw Dr. Goldman on October 8, 2020. R. 1398. He noted that Mr. Abrams "was in tip top sha[p]e" before the pandemic. R. 1399. In contrast, he noted, he "[n]ow can get exhausted with light housework or yardwork," "[f]eels like the wors[t] flu he's ever had," and "[f]eels clobbered now just from coming here." *Id*. Mr. Abrams reported, *inter alia*, "a completely new symptom": "feels like 'feet and hands are on fire...like pin cushions.'" R. 1399-1400. Dr. Goldman reviewed laboratory test results. R. 1403-04. He concluded:

> ...**he meets the IOM definition 2015 for ME/CFS** with 1) a substantial reduction or impairment in the ability to engage in pre-illness levels of occupational, educational, social, or personal activities (specifically physical running and occupational law professor...) that persists for more than six months (since April) and is accompanied by fatigue, which is often profound, is of new or definite onset (not lifelong), is not the result of ongoing excessive exertion, and is not substantially alleviated by rest (see HPI); 2) post-exertional malaise: he has worsening of symptoms and function after exposure to physical (I.e. light housework or yardwork) or cognitive stressors (working at computer concentrating, reading, etc) that were normally tolerated before disease onset (see HPI); and 3) unrefreshing sleep. He also has cognitive impairment, which is manifest by problems with thinking or executive function exacerbated by exertion, effort, or stress or time pressure (see HPI).

R. 1398-99 (emphasis added). Dr. Goldman recommended "[o]ngoing rest with gradual resumption of light physical activity" and made rheumatology and neurology referrals. R. 1399.

On December 15, Mr. Abrams felt "the same," "[s]till having a hard time concentrating. The sleep is 'just awful', has vivid, disturbing dreams. Ongoing tremor of the left hand." R. 1550-51. Dr. Goldman reiterated his assessment of ME/CFS and noted that Dr. Kober and Dr. Simon "seem to concur on the diagnosis..." R. 1551. He explained, "ME/CFS is a diagnosis with unclear pathophysiology, and thus no clear treatment approach, other than supportive care." *Id*. *See* R. 1548 (Dr. Kober, 12/10/20), 1632 (Dr. Kober, 2/23/21: "He meets the 2015 IOM criteria for myalgic encephalomyelitis/chronic fatigue syndrome (ME/CFS)...Clinical evaluation and laboratory testing has ruled out other conditions that would reasonably explain his symptoms.").

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

#### 4.   Rheumatologist Dr. Simon diagnosed ME/CFS.

On November 11, 2020, Mr. Abrams reported to Dr. Simon "ongoing symptoms of rather profound and persistent fatigue, malaise, generalized myalgia, intermittent paresthesia…and significant cognitive impairment with difficulty in concentrating, focusing on tasks and memory recall" that had "contributed to an inability to currently continue in his law practice." R. 1502. He also reported "significant disruption of restorative sleep and awakens most mornings feeling unrefreshed…" R. 1503. Dr. Simon noted that testing and treatment had been largely ineffective in explaining or mitigating Mr. Abrams's severe symptoms. *Id*.

On examination, Dr. Simon observed "[m]ultiple soft tissue points with features suggestive of allodynia[5] with > 11 [out of 18] fibromyalgia tender points noted." R 1506. He diagnosed "Myalgic encephalomyelitis syndrome (acute onset 4-5/2020 following acute onset febrile type illness with myalgia, malaise/fatigue) Active."[6] R. 1520. He summarized:

> Clinical symptoms consistent with diagnostic criteria of a[] syndrome seen to have developed following temporal relationship of early peak COVID-19 spike 4/2020 although COVID-19 antigen test x2 - and subsequent follow-up COVID-19 IgG negative in August 2020 but without other identified associated viral or nonviral condition to account for the sudden onset of this type of condition. Additionally, I cannot identify any particular defined autoimmune systemic disorders that would present in this type of fashion and also he has not had any findings that would suggest an underlying infectious or malignant type process to account for his symptomatology despite a fairly extensive laboratory and imaging evaluation.

*Id*. Dr. Simon recommended increasing gabapentin to help reduce pain and improve sleep quality and suggested that additional medications be considered for fatigue and pain. R. 1521.

/ / /

/ / /

---

[5] "People with allodynia are extremely sensitive to touch. Activities that aren't usually painful (like combing one's hair) can cause severe pain." https://my.clevelandclinic.org/health/symptoms /21570-allodynia#:~:text =Allodynia %20is%20a%20type%20of,conditions%20and%20injuries%20cause%20allodynia (accessed Jan. 10, 2021).
[6] The Mayo Clinic explains that CFS, "also known as myalgic encephalomyelitis (ME)," is "[s]ometimes …abbreviated as ME/CFS." https://www.mayoclinic.org/diseases-conditions/chronic-fatigue-syndrome/ symptoms-causes/syc-20360490(accessed Jan. 10, 2022).

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 9

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

### 5.   Neurologist Dr. Reif identified cognitive problems and a significant tremor and diagnosed post-viral syndrome, possibly COVID-related.

On November 30, 2020, Dr. Reif evaluated Mr. Abrams for tremors, cognitive problems, headaches and migraines, sleeplessness and neurasthenia. R. 1538. Mr. Abrams reported a worsening left hand tremor, fevers, night sweats, weakness, shortness of breath, concentration problems, nightmares and night terrors, fatigue, wooziness, blurry and distorted vision, and headaches. R. 1539. Dr. Reif noted "a history of some chronic daily headaches going back to 2015" and hand tremors (L>R) "going back 2½ years," "all thin[g]s he could cope with." *Id*. However, she noted, since the onset of illness in April, he "has felt weak," "cannot exercise," "is short of breath," and "feels like his mind is 'gone.' He cannot concentrate..." *Id*.

Mr. Abrams scored 26/30 on the Montreal Cognitive Assessment. R. 1540. [7] "Points off were [for] recall [of] only ⅗" and "Maze test, he completed in 20 seconds but with three mistakes." *Id*. Dr. Reif observed "positional tremor" and "some end intention tremor on both sides." R. 1542. She ordered additional testing. *Id*. On December 22, Dr. Reif administered Botox injections to treat the migraines and assessed "Chronic migraine" and "PostViral syndrome possibly COVID related despite negative testing months ago, marked by muscle pain, exhaustion, tremors, cognitive impairment…" R. 1555.

When Dr. Reif saw Mr. Abrams on February 16, 2021, despite doubling his Provigil dose, he felt "tired but…able to keep going…but then he gets exhaustion as it wears off." R. 3738. His headaches continued despite medication and his sleep was disturbed. R. 3738-39 ("He might sleep until 3:00 to 4:00 a.m. and then be up for an hour before being able to go back to sleep.") He also reported "afternoon fevers" and feeling "achy all over including his joints and muscles."

---

[7] The Montreal Cognitive Assessment is a 30-question rapid screening tool to detect cognitive dysfunction. A score of 26 is the cutoff for normal results. *See* https://www.mocatest.org/faq/ (accessed Jan. 11, 2022).

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 10

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

R. 3739. Tachycardia continued, "from something as simple as bending over," causing dizziness. *Id*. Dr. Reif assessed "Postviral syndrome with exhaustion, cognitive fog, insomnia..." *Id*.

### 6.   Pulmonologist Dr. Pappas assessed presumed COVID and ME/CFS.

On April 15, 2021, Dr. Pappas provided "consultation on this 66 y.o. male with profound fatigue following presumed COVID 19 infection." R. 3760. Mr. Abrams reported "dyspnea walking down the street 150 yards from his house" and becoming "winded walking up his stairs." R. 3761. Dr. Pappas noted, "He does not have wheezing, but simply feels his lungs are not working properly. If lying on his side, he cannot take a deep breath." *Id*. Dr. Pappas ordered lung function studies and a sleep medicine evaluation. R. 3760. He assessed "Presumed COVID-19 infection spring 2020," ME/CFS, sleep disturbance and paresthesias. *Id.*

### 7.   Endocrinologist Dr. Szkudlińska assessed ME/CFS.

In April 2021, Mr. Abrams was evaluated by Dr. Szkudlińska for "any endocrine findings to explain his difficulties." R. 3760. After reviewing his history, evaluations and testing, Dr. Szkudlińska assessed ME, obstructive sleep apnea and low testosterone. R. 3786. She ordered laboratory tests and noted that a sleep medicine evaluation was planned. *Id.*

### 8.   Sleep specialist Dr. Stolz assessed persistent fatigue with ME/CFS.

Mr. Abrams was evaluated by Dr. Stolz on April 23, 2021. R. 3790. Her impressions included existing obstructive sleep apnea, "[u]nusual behavior at night consistent with REM sleep behavior disorder," "[p]ersistent fatigue with ME," and a mood disturbance. *Id*.

### 9.   Dr. Friedly, the Executive Director of the University of Washington Post-COVID Clinic, assessed post-COVID symptoms.

In April 2021, Mr. Abrams was seen at the new UW Post-COVID Clinic. R. 3788-89. He reported to Dr. Friedly, the Clinic's Executive Director, chronic fatigue, ongoing sleep difficulties, night sweats, "'brain zaps' - dizzy, vertigo, when close eyes," continuing fevers and "[j]oints

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 11

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

hurting all the time." R. 3801. Dr. Friedly's impression was "post-COVID fatigue, sleep disturbance, brain fog, neurological symptoms and neck pain, dizziness, and new elbow bursitis." R. 3797. Her treatment plan included PT, medication for bursitis, a sleep study, and psychology, endocrinology and acupuncture referrals. R. 3798. The Clinic provided Social Security assistance and a psychological evaluation revealed major depression. R. 3801.

### D. Mr. Abrams Suffers from Cognitive Impairments.

In May 2020, Mr. Abrams told Dr. Floyd, "brain is mush, very tired." R. 1590. He noted brain fog as among his "first symptoms" on Unum's claim form in July 2020. R. 63. Dr. Kober reported "mental fogginess" as a disabling symptom to Unum. R. 1149 (7/10/20). Dr. Goldman noted, "He also has cognitive impairment, which is manifest by problems with thinking or executive function exacerbated by exertion, effort, or stress or time pressure." R. 1398-99 (10/8/20). Dr. Reif also found evidence of cognitive problems. *See* pp. 8, 10-11, *supra*.

In December 2020, neuropsychologist Dr. Rochelle Winnett administered cognitive testing, which revealed mild learning and memory deficits, with "isolated insufficiencies in visual encoding of information" that "may have impacted his visual retrieval for complex visual memory." R. 2316. Mr. Abrams also exhibited moderate impairment on a "[c]omplex visual-spatial retrieval of a Rey Complex figure..both short-term and over time delay (less than the 1st percentile for both)." *Id*. He later described the testing to Dr. Reif as "boringly easy compared to the work he would do as an attorney." R. 2516.

In three written statements, Mr. Abrams described cognitive problems: decreased "mental endurance, strength and focus" that prevents him from reading, interferes with watching a movie (R. 1638) or having a telephone discussion (R. 3803); problems finding appropriate words in writing (R. 1639); and brain fog such that he "can't remember or recall very simple things, like names of relatives and how to do simple math computations" and that "makes it so that I cannot

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 12

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

concentrate or focus on much of anything" (R. 3802) or "remember[] words and people and events and facts, every day." R. 3965. *See* R. 1635-40 (3/21), 3802-05 (5/21), 3964-65 (7/21).

Professional colleagues and family members attested to Mr. Abrams's dramatic cognitive decline with the onset of illness. His former partner at Schwabe, litigation and intellectual property lawyer Brenna Legaard, stated that Mr. Abrams "loved working, and…working hard" and had a "phenomenal" work ethic. R. 1871. She explained that in February 2020, weeks before the sudden onset of his illness, he had helped her on a "very complex patent case" that required him to "learn a technology that was new to him (radio frequency identification), understand the client's very complex global supply chain and business model, and apply complex patent damages law." R. 1872. She observed, "He had the analytical ability, legal acumen, and mental energy to attack that learning curve and get up to speed very rapidly." *Id*.

In contrast, Ms. Legaard explained, after he became ill in late April 2020, Mr. Abrams "tried to participate in legal work just as he had before he became ill." *Id*. He "attempted to participate in video and conference calls with clients and team members, strategize…, draft work product, review bills, and advise clients," but "could not continue to perform as a lawyer due to his illness." *Id*. She explained that months later, the "few times he tried" to perform legal work, his "communications were confused" and "it was unclear to me that he was able to understand the information conveyed to him or participate in the analysis." R. 1872.

In her February 2021 statement, Mr. Abrams's wife, Karen O'Leary, stated that Mr. Abrams was "by nature an energetic and upbeat person," and "a workaholic in the best sense of the word," but that this had "changed, profoundly, when he became ill" in April 2020. R. 1874. She observed that he now struggles "to concentrate enough to read or watch some TV," "can read for only 10-15 minutes at most before losing concentration," and cannot "follow the story lines of movies and becomes exhausted and dispirited trying to do so." *Id*. In a May 2021 statement, she

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 13

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

observed, "Bill has always been a sharp and witty person. Now he loses his train of thought, forgets things, and has less interest in the world." R. 3806.

In response to Unum's Dr. Scott Norris's assertion in a file review that Mr. Abrams did not meet ME/CFS criteria because "clinical MSEs and NP testing did not support significant cognitive impairment" (R. 3903), Mr. Abrams provided four additional statements, by Stanford professors Robert David Siegel, M.D., Ph.D (Dept. of Microbiology and Immunology) and William B. Gould IV (Professor of Law, Emeritus), and by his sister and his son, all of whom had frequent ongoing contact with Mr. Abrams. R. 3952-63.

Dr. Siegel explained in his July 2021 statement that "[f]or well over a year," "Bill has complained of mental clouding, inability to maintain a train of thought, extreme exercise intolerance even for simple activities, and daily fevers." R. 3963. He stated that in speaking with Mr. Abrams, "two things…are most striking": "1) after some period of time he will state that he is exhausted and has to go and lie down; 2) when I make suggestions, he will often tell me [he] has to write them down or asks me to send them to him so he can remember them." *Id.*

Mr. Gould observed that since Mr. Abrams became ill, "I have observed slower speech and an inability to process information that requires analysis - a sharp contrast" to his prior abilities, as well as "losing his train of thought in conversation, genuine confusion, apparent reduced concentration, and an inability to find the right word to address the subject matter which we are discussing." R. 3960. He added, "Most alarming is his inability to recollect recent conversations and considerable difficulty with complex information requiring analysis..." *Id.*

Peggy Abrams explained that since the onset of his illness, her brother "speaks very slowly and it takes him an abnormally long time to respond to a question or engage in the discussion," and "has a hard time finding words." R. 3957. She recounted, "last weekend on the

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 14

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

phone [] several times during our discussion, he could not remember what he had just said, and he kept losing his train of thought." *Id*.  She added, "This is a dramatic, shocking change..." *Id*.

Teddy Abrams explained that when he visited his father in June 2021, for the first time in 18 months, "...I was not prepared to see such a sharp decline." R. 3958. He observed that his father, who had been "in excellent shape his entire life" with "a near-photographic memory [of] events that occurred years or even decades ago," now "has mental exhaustion" such that he must "search for words and memories" and can "become entangled in fuzziness," and that his "ability to concentrate or focus" has "shrunk to mere minutes at a time." R. 3958-59.

### E.  Unum Denied Mr. Abrams's LTD Claim and Appeal.

In September 2020, Unum denied Mr. Abrams's claim, based upon in-house physician reviews. R. 1155-57, 1184-85 (Drs. Mirabelle Kim, Matthew Lundquist, internists). Unum asserted in its denial letter of September 2020, "Our review concluded that impairment is not supported for the duration of the policy's elimination period (90 days) or beyond." R. 1213.[8] Unum asserted, "The clinical office notes indicate that you have been free of fevers/afebrile and your clinical exams did not indicate any focal neurologic deficits or cognitive difficulty" and that Mr. Abrams's "treatment plan" of "medications, hematology evaluation, and pulmonary function tests" "can typically be provided concurrently while performing the noted sedentary demand level of your occupation." R. 1214. Unum did not discuss the cognitive, travel or time demands of Mr. Abrams's "regular occupation." *See* R. 125 (policy), R. 1004, and p. 22, *infra*.

---

[8] Unum failed to disclose that its "medical review" had "determined" that Mr. Abrams *was* disabled from April 20 to June 3, 2020 (R. 1194) and that an in-house lawyer, Stephen Walker, altered Unum's draft denial letter to state that Mr. Abrams never was disabled at all, as asserted in the denial letter Unum issued. *Compare* R. 1194 (draft) with R. 1211 (issued). Unum – the ERISA fiduciary – concealed Mr. Walker's intervention by redacting the draft denial and Mr. Walker's file note (R. 1202-03) from its "administrative record," even though *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 932-33 (9th Cir. 2012), held that such communications are exempt from attorney-client privilege. Glor Decl. ¶ 3, 5 and Ex. D (redacted letter Unum put in its claim file, without explanation or a privilege log). This alteration was discovered when Mr. Abrams's counsel did a page-by-page review of Unum's 4001-page "administrative record." *See Id.*  ¶ 3 and Ex. B (her email requesting unredacted copies of the documents).

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

In March 2021, Mr. Abrams submitted a 900-page appeal to Unum under ERISA, including Drs. Floyd and Kobers' reports; specialist reports; witness statements; his own statement and logs/photos/videos of elevated temperature readings in the fall and winter of 2020-21; and medical literature addressing the diagnostic criteria and symptoms of ME/CFS. R. 1289-2218. He submitted three supplemental letters during Unum's appeal review, with additional medical records, temperature recordings, and literature, and four additional witness statements discussed above. R. 3735-3806 (5/7/20), 3828-31 (5/28/20), 3950-65 (7/7/20).

In July 2021, after obtaining a third in-house paper review (R. 3901-06, Dr. Norris, family, occupational and aerospace medicine), Unum denied Mr. Abrams's appeal, asserting in its final letter, "Mr. Abrams has reported disability primarily based on fatigue and other somatic complaints, including weakness, brain fog, and a persistent fever," but that "mental status and physical exam findings" were "generally unremarkable." R. 3972. Unum stated that neuropsychological tests "demonstrated essentially normal cognitive functioning with the exception of some isolated findings with visual-spatial skills," which was "consistent with his documented mental status exams which did not document cognitive deficits." *Id*. Unum added that according to its consultant, "Mr. Abrams did not meet the criteria for CFS" because "his medical records have not supported significant cognitive impairment," as is "required for the diagnosis of CFS/ME." R. 3973. Unum did *not* address in its denial letters:

1. Medical literature confirming that "there are no direct tests to diagnose CFS" and "[i]f the source of the fatigue can be explained, the patient probably does not have CFS," which is a "diagnosis of exclusion." R. 2187. *See* R. 2208 ("medical examination and laboratory testing are used to exclude other illnesses that have similar symptoms.")

2. Observations of six witnesses: two Stanford professors, Mr. Abrams's former law partner (who worked with him in Winter 2020-Spring 2021, before and after he became ill), and three family members, attesting to physical and cognitive deficits. *See* pp.12-15, *supra*.

3. Mr. Abrams's activities/symptoms logs (R. 1864-66) and temperature logs (R. 1808-52, 1867-70) with corresponding videos and photographs (Dkt. #20).[9]

## III.  ARGUMENT

"A denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is...reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Schwabe LTD policy does not grant discretion to Unum, and in Oregon, where Schwabe purchased the policy, so-called discretionary clauses have been banned. OAR 836-010-0026.[10] Accordingly, the applicable standard of review is *de novo*.

Under a *de novo* review, Mr. Abrams has met his burden of proving by a preponderance of the evidence that "due to [] sickness," he is "limited from performing the material and substantial duties of [his] regular occupation" as a trial and appellate attorney, his "specialty in the practice of law which [he was] routinely performing when [his] disability beg[an]." R. 125, 105 (policy provisions); *See* R. 1004 (Unum's summary of Mr. Abrams's occupational duties).

### A.  Mr. Abrams's Medical Record Establishes His Disability.

Dr. Floyd's records document the sudden onset of Mr. Abrams's severe, disabling physical and cognitive symptoms in April 2020, and Dr. Kober's records document the continuation and progression of his illness. The medical record establishes that Mr. Abrams was disabled from his regular occupation when he left work on April 20, 2020, because of functional deficits caused by what was later diagnosed as post-viral syndrome, ME/CFS and/or COVID or presumed COVID: Daily fevers, chronic fatigue, brain fog, compounded by cognitive impairment (concentration, word-finding, memory, and learning deficits), malaise, body aches,

---

[9] Unum documented its receipt of "images and videos on disc" but never documented any review of those "dozens" of images documenting elevated temperatures, as Mr. Abrams had reported. R. 2230.
[10] Discretionary clauses have also been banned in Washington, where Mr. Abrams worked and resides.  WAC 284-44-015(1).

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 17

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

pain in the hands and feet, chronic migraines/headaches, sleep problems (poor/irregular sleep, difficulty initiating and remaining asleep, unrefreshing sleep, hypersomnolence, and vivid nightmares), night sweats, worsening of a left hand tremor, abdominal cramping, chest pain and depression. *See* pp. 3-12, *supra*. Dr. Kober repeatedly confirmed that Mr. Abrams is disabled:

- 7/08/20: "pt wasn't able to work from 4/21/20…" R. 46. "patient currently unable to work due to fatigue, brain fog…No stamina to work longer than 15 minutes. He needs frequent naps." R. 45.

- 9/09/20: "Patient still having fever up to 104°[F.] His fatigue, fever, mental fogginess does <u>not</u> permit him to work." R. 1149 (emphasis in original).

- 9/17/20: "Although we have not had a unifying diagnosis for his current symptoms, it is the symptoms that are causing his disability and inability to work in any capacity…He is unable to read or write for longer than 15 minutes without having to stop and rest. His processing speed is affected. It is taking him 2 hours to compose a straightforward 4 paragraph document." R. 1248.

- 2/23/21: "...Mr. Abrams has been disabled since he abruptly stopped working in April, 2020"; "He is unable to perform any gainful work tasks for more than a few minutes and at best up to one hour, intermittently…"; "If Mr. Abrams were to attempt to work, he would predictably be unable to do so for more than 0-2 hours per day. He would not be able to put together 1-2 workdays or partial workdays in a given week…It is inconceivable that he could work in any job part-time or full-time." R. 1633.

All specialists observed severe symptoms; none questioned Mr. Abrams's credibility.

**B. Unum Erroneously Denied Mr. Abrams's Disability Claim.**

Unum and its in-house physicians ignored the record as a whole and selectively chose facts out of context in asserting their erroneous conclusion that Mr. Abrams is not disabled.

**1. Unum ignored the record and did not examine Mr. Abrams.**

Unum ignored and discounted the record, which establishes that Mr. Abrams has been disabled by his chronic symptoms since he left work in April 2020, and that his condition has worsened. There is no known cure for ME/CFS, which is associated with alarming disability rates. *See* R. 1936 ("...15 studies conducted between 1966 and 2004 showed that unemployment rates among those with [ME/CFS] ranged from 35 to 69 percent in 13 of these studies (Taylor and Kielhofner, 2005)."). No provider opined that Mr. Abrams could work and

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 18

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Unum never had a physician examine him. *See Gorena v. Aetna Life Ins. Co.,* No. C17-532

MJP, 2018 U.S. Dist. LEXIS 104071, at *20 (W.D. Wash. June 15, 2018) ("As the Ninth

Circuit observed in *Montour v. Hartford Life & Acc.[] Ins. Co*., 588 F.3d 623, 634 (9th Cir.

2009), '[w]hile the Plan does not require a physical exam by non-treating physicians, in this

case that choice 'raise[s] questions about the thoroughness and accuracy of the benefits

determination[.]'"" (citation omitted)). Six witness statements, Mr. Abrams's statements and

activity/temperature logs, and medical literature fully support his claim of disability.

Courts have repeatedly told Unum that it must consider the record as a whole. Just

weeks ago, in *Kieserman v. Unum Life Ins. Co. of Am.*, No. C21-0448-JCC, 2021 U.S. Dist.

LEXIS 233200, *14 (W.D. Wash. Dec. 6, 2021), this Court overturned Unum's claim denial,

based upon file reviews that ignored the reports of the plaintiff and her treating physician, and

cognitive requirements of the plaintiff's demanding occupation. *See also Woolf v. Unum Life

Ins. Co. of Am.*, No. 2:19-cv-07353-FLA (KSx), 2021 U.S. Dist. LEXIS 195346 (C.D. Cal.

July 2, 2021) (concluding, in overturning Unum's denial of a disability claim involving

subjective symptoms of fatigue and pain, that Unum "selectively chose information that

supported termination of Plaintiff's claim."); *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d

698, 711 (C.D. Cal. 2020) ("In the context of a condition, such as [ME/CFS], characterized

by disabling pain and fatigue, a physician invariably relies on a patient's descriptions of his or

her condition and other types of subjective information in making a diagnosis and in

assessing a patient's limitations." (citing *Salomaa v. Honda Long Term Disability Plan*, 642

F.3d 666, 678 (9th Cir. 2011)).

### 2. Unum ignored the nature of ME/CFS.

Unum asserted in denying Mr. Abrams's claim that he "reported disability primarily

based on fatigue and other somatic complaints, including weakness, brain fog, and a persistent

fever," but that mental status and physical exam findings were "generally unremarkable." R. 3972. Unum cited negative diagnostic test results (R. 1213-14, 3885), including COVID tests (R. 1213, 3972), "unremarkable" exam findings (R. 3972), and the absence of documentation of specific symptoms at office visits (e.g., no "cough, chest pain, shortness of breath, vomiting, diarrhea, dysuria[,] skin rashes, focal joint swelling, neurological… symptoms" (R. 1213), no "joint swelling or abnormalities, neurological deficits, cardiopulmonary abnormalities, organ enlargement, rashes, or lymph node swelling" (R. 3972)), including fevers (R. 1213, R. 3972)).

Unum's assertions ignored the nature of ME/CFS, which is diagnosed based upon the presence of *subjective* symptoms for at least *six* months and the ruling out of other conditions that explain the symptoms. *See* AR 2192 (CDC), R. 1632 (Dr. Kober); *Tam*, 491 F. Supp. 3d at 711 ("Unum's doctors' focus on the lack of objective evidence was improper because CFS is not established through objective evidence."); *Salomaa*, 666 F.3d at 678 ("...conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious.").

### 3.   Unum ignored objective evidence of Mr. Abrams's daily fevers.

Because "CFS does not have a generally accepted 'dipstick' test," *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1112 (9th Cir. 1999), it is rare for an ME/CFS patient to provide objective evidence supporting his claim of disability. Mr. Abrams provided such evidence in his appeal: 64 photographs and 111 video recordings showing him taking his temperature in the Fall 2020 and Winter 2021. Dkt. # 20.[11] The images objectively corroborate his reports of daily fevers – a symptom that has disabled him since the outset of his disability in April 2020. In May 2021, he added 27 additional videos. *Id*. Thus, 202 recordings refuted the implication – *that he had lied to his providers* – behind Unum's assertion that he did not have a fever at specific office visits. *See*

---

[11] This was in addition to 52 handwritten pages with his temperature notations. *See* p. 16, *supra*.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

R. 1214 ("The clinical office notes indicate that you have been free of fevers/afebrile."). His son

corroborated his reports. R. 3958 ("He ran a 100+ degree fever every day that I was in town.")

Ignoring this objective evidence, Unum reasserted in bad faith in its final denial letter,

"...while reporting a persistent daily fever Mr. Abrams's medical records have documented

generally normal[] temperatures during office visits." R. 3972. *See also* R. 3902 (Dr. Norris, final

file review: "Although the EE reported frequent moderate to high fevers, clinical evaluations

described predominantly normal temperatures."). *In Ratkovic v. Northrop Grumman Corp. Empl.*

*Welfare Benefit Plan*, No. CV 06-08255 MMM (JWJx), 2009 U.S. Dist. LEXIS 13862, at *33

(C.D. Cal. Feb. 20, 2009), the court stated: "When a plan administrator ignores undisputed

evidence that might support an award of benefits, it *abuses its discretion*." *See Robertson v.*

*Standard Ins. Co.*, 139 F. Supp. 3d 1190, 1204 (D. Or. 2015) (a "plan administrator may not 'shut

[its] eyes to readily available information when the evidence in the record suggests that the

information might confirm the beneficiary's theory of entitlement.'" (citation omitted)).

### 4. Unum ignored conclusive evidence of Mr. Abrams's cognitive impairments.

Unum asserted in its denial letter, "your clinical exams did not indicate any...cognitive

difficulty" (R. 1214), asserted in its medical review of Mr. Abrams's appeal that "clinical MSEs

and formal NP testing did not identify impairing cognitive deficits" (R. 3903), and asserted in its

final denial that neuropsychological testing "demonstrated essentially normal cognitive

functioning." R. 3972. Unum also asserted that "Mr. Abrams did not meet the criteria for CFS"

because "his medical records have not supported significant cognitive impairment," which is

"required for the diagnosis of CFS/ME." R. 3973.

The record is replete with evidence of cognitive impairment ignored by Unum, including,

in addition to Mr. Abrams's reports, Dr. Winnett's observations of subtle cognitive problems in

testing, and observations by six witnesses, including Mr. Abrams's former law partner, two

Stanford professors, and three family members. *See* pp. 13-15, *supra*. Dr. Goldman confirmed in diagnosing ME/CFS, "He also has cognitive impairment, which is manifest by problems with thinking or executive function exacerbated by exertion, effort, or stress or time pressure." R. 1398-99. Unum disregarded this material evidence in bad faith. *See Perryman v. Provident Life & Acc. Ins. Co.* [UNUM], 690 F. Supp. 2d 917, 945 (D. Ariz. 2010) (in overturning Unum's denial of a CFS patient's disability claim, "the Court is unpersuaded that the lack of objective mental testing requires it to totally discount the observations of Perryman's treating physicians who noted the existence of various neuropsychological problems during their treatment of her.").

### 5. Unum ignored the essential duties of Mr. Abrams's regular occupation.

Unum's assertion that the "treatment plan" of "medications, hematology evaluation, and pulmonary function tests" "can typically be provided concurrently while performing the…sedentary demand level of your occupation" was absurd. R. 1214. It is preposterous and astounding that Unum contends that Mr. Abrams's extensive and demanding legal practice was "sedentary." R. 105. No trial and appellate lawyer suffering Mr. Abrams's debilitating conditions could perform the "material duties" of their "regular occupation." Unum did not assess Mr. Abrams's capacity to perform the high-level cognitive demands of his practice: analyzing complex issues (R. 201), making court appearances (*id*.), working 15-hour days (R. 2533), and traveling extensively (*id*.). *See Woolf*, 2021 U.S. Dist. LEXIS 195346, at *30 (Unum "improperly dismiss[ed] Plaintiff's subjective reports of impairment" and "fail[ed] to consider how chronic pain and fatigue would impact the performance of a mentally demanding job as a computer systems analyst…" (citing *Salomaa*, 642 F.3d at 678); *Brown v. UNUM Life Ins. Co. of Am.*, 356 F. Supp. 3d 949, 966 (C.D. Cal. 2019) ("Unum's physician consultants…did not discuss Plaintiff's ability to satisfy the non-physical demands of her usual occupation; instead, they focused on the minimal physical demands, finding that Plaintiff could meet those demands.")

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 22

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

### 6.   Unum ignored the observations of six witnesses.

Unum's appeal review acknowledged that Mr. Abrams's appeal included witness statements (R. 3901), but did not discuss them. *See* R. 3901-06 (Dr. Norris's 6/17/21 file review). In *Laurie v. United of Omaha Life Ins. Co.*, No. 3:14-cv-01937-YY, 2017 U.S. Dist. LEXIS 35430, at *51 (D. Or. Jan. 23, 2017), the court observed that statements by the plaintiff's colleagues, friend, and pastor, "corroborating the effects of her CFS," including cognitive problems, were "highly probative of…whether Laurie's subjective CFS symptoms prevent her from working.") *See Dykman v. Life Ins. Co. of N. Am.*, No. 3:20-cv-01547-IM, 2021 U.S. Dist. LEXIS 216616, *30 (D. Or. Nov. 8, 2021) ("at no point did LINA address…his mother's statement documenting how MS affected Dykman over the years."). UNUM ignored five more statements provided in July 2021 (R. 3950-63) in response to Dr. Norris's assertions in a June 17 file review that "formal NP testing did not identify impairing cognitive deficits" and that "clinical MSEs and NP testing did not support significant cognitive impairment." R. 3903. Unum did not analyze this rebuttal evidence. R. 3969-77. *See* pp. 14-15, *supra*.

### C. Unum Should be Ordered to Approve and Pay Mr. Abrams's Claim.

ERISA imposes on plan fiduciaries the responsibility to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" "for the exclusive purpose of" "providing benefits..." ERISA § 404, 29 U.S.C. § 1104. In *Metropolitan Life Ins. Co v. Glenn,* 554 U.S. 105, 115 (2008), the Supreme Court explained:

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator… that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, [29 U.S.C.] §1104(a)(1). *Id.*

Unum breached its fiduciary duty by failing to credit Mr. Abrams's treating providers' credible opinions, which are supported by the record as a whole, and adopting the assertions of

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 23

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

its consultants *who never sought to examine Mr. Abrams*. *See* p. 19, *supra.* (citing, *inter alia,*

*Gorena*) ("Defendant's refusal to credit" plaintiff's medical evidence "based on evidence and

opinions which do not credibly rebut the weight of Plaintiff's data...constitutes a breach of

Aetna's fiduciary duty under ERISA to 'discharge [its] duties with respect to a plan solely in the

interest of the participants and beneficiaries.'"). Unum disregarded the record, ignored the nature

of ME/CFS, and misstated and omitted facts to reach irrational conclusions.

Mr. Abrams has proved based upon the record that he has been disabled from his regular

occupation from April 2020 through the close of the record in July 2021, when, with no

improvement and at the age of 66, he was a patient in the UW post-COVID Clinic. Accordingly,

Unum should be ordered to reinstate and pay Mr. Abrams's claim through the date of judgment.

ERISA § 502(a)(1)(B) permits the court to "clarify...rights to future benefits under the

terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See A.A. v. Blue Cross & Blue Shield*, No. 2:13-

cv-00357-RSM, 2014 U.S. Dist. LEXIS 29986, *29 (W.D. Wash. Mar. 7, 2014) ("...the Court is

invested with the authority to determine A.A.'s eligibility for future…benefits under the Plan.").

Mr. Abrams asks this Court to clarify his right to future benefits by ordering Unum to continue

paying his claim through July 20, 2023, the "maximum period of payment" of 36 months (R. 93),

absent a showing of improvement such that a reasonable physician would conclude that he can

return to work in his regular occupation, without undue disruptions or absences due to his illness

and related symptoms.

## IV.  CONCLUSION

For the foregoing reasons, plaintiff respectfully asks this Court to grant his Motion for

Judgment pursuant to Fed. R. Civ. Pro. 52(a).

/ / /

/ / /

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 24

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Dated: February 2, 2022

> SIRIANNI YOUTZ SPOONEMORE
> HAMBURGER
>
> By:   *s/ Eleanor Hamburger*
> By:   *s/ Richard E. Spoonemore*
> Eleanor Hamburger (WSBA #26478)
> Richard E. Spoonemore (WSBA #21833)
>   3101 Western Avenue Suite 350
>   Seattle, WA 98121
>   Telephone: (206) 223-0303
>   Facsimile: (206) 223-0246
>   ehamburger@sylaw.com
>   rspoonemore@sylaw.com
>
>
> MEGAN E. GLOR ATTORNEYS AT LAW
>
> By:   *s/ Megan E. Glor*
> Megan E. Glor (OSB #930178) *(pro hac vice)*
>   707 NE Knott Street, Suite 101
>   Portland, OR 97212
>   Telephone: (503) 223-7400
>   Facsimile: (503) 751-2071
>   megan@meganglor.com
>
> Attorneys for Plaintiff William F. Abrams

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 25

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

**CERTIFICATE OF SERVICE**

I hereby certify that on the February 2, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Megan E. Glor**
  megan@meganglor.com, robert@meganglor.com

- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, stacy@sylaw.com, theresa@sylaw.com

- **Riley R. Moyer**
  moyerr@lanepowell.com, docketing-sea@lanepowell.com, endresj@lanepowell.com

- **D. Michael Reilly**
  reillym@lanepowell.com, docketing-sea@lanepowell.com, fosters@lanepowell.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, stacy@sylaw.com, theresa@sylaw.com

DATED: February 2, 2022

s/ Megan E. Glor
Megan E. Glor (OSB #930178) (*pro hac vice*)

Plaintiff's Motion For Judgment (FRCP 52(a)) - Case No. 2:21-cv-00980-TL
Page 25

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400