# Exhibit E

| | |
|---|---|
| **From:** | BenefitsEmail |
| **Sent:** | Fri, 11 Sep 2020 16:57:51 +0000 |
| **To:** | PegaAutomation - PPK68SN4 |
| **Subject:** | FW: 17935867 |

**From:** Igitkhanyan, Kristine
**Sent:** Friday, September 11, 2020 12:57:50 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** BenefitsEmail
**Subject:** 17935867

**From:** Walker, Stephen William <SWalker@UNUM.COM>
**Sent:** Friday, September 11, 2020 9:57 AM
**To:** Igitkhanyan, Kristine <KIgitkhanyan@UNUM.COM>
**Subject:** RE: Attorney/Client Privileged Communication

Thanks, Kristine. I'll give it a look and get back to you.

**From:** Igitkhanyan, Kristine <KIgitkhanyan@UNUM.COM>
**Sent:** Friday, September 11, 2020 12:56 PM
**To:** Walker, Stephen William <SWalker@UNUM.COM>
**Subject:** Attorney/Client Privileged Communication
**Importance:** High

Hi Stephen,

As we discussed, I have enclosed the letter for Abrams (#17935867) for you to review. Thank you.

Kristine

## *Kristine Igitkhanyan*
**Unum Life Insurance Company of America**
**Lead Benefits Specialist**
**Phone 1-877-851-7637  ex14561**
**Fax     1-877-851-7624**
KIgitkhanyan@unum.com
*Your email is very important to us. We are experiencing higher email volumes than usual. For information and resources regarding Unum's COVID-19 response and FAQs, visit* Unum.com/COVID-19.
**Unum COVID-19 Response**
**Stay up to date with the evolving coronavirus news and how it affects you here.**
www.unum.com

Unum Corporation is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via- e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum



Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

```
                              Document Detail
--------------------------------------------------------------------------------
Checked/Unchecked Indicator: No

Document ID: 2020091114395790DD06

Entry Date: 09/11/2020 14:39:58

Received Date: 09/11/2020

Date Added to Claim: 09/11/2020

Primary Doc Type: Legal

Secondary Doc Type: Privileged Communications

Medical Provider:

Document Notes: Atty/Client Privileged Communication

Work Notes:
```

*Claimant Name: William  Abrams*       *Claim #:   17935867*

| | |
|---|---|
| From: | BenefitsEmail |
| Sent: | Fri, 11 Sep 2020 16:56:04 +0000 |
| To: | PegaAutomation - PPK68SN4 |
| Subject: | FW: 17935867 |
| Attachments: | Abrams Letter for DLR Review - Privileged Communication .docx |
| Importance: | High |

**From:** Igitkhanyan, Kristine
**Sent:** Friday, September 11, 2020 12:56:03 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** BenefitsEmail
**Subject:** 17935867

**From:** Igitkhanyan, Kristine
**Sent:** Friday, September 11, 2020 9:56 AM
**To:** Walker, Stephen William <SWalker@UNUM.COM>
**Subject:** Attorney/Client Privileged Communication
**Importance:** High

Hi Stephen,

As we discussed, I have enclosed the letter for Abrams (#17935867) for you to review. Thank you.

Kristine

### Kristine Igitkhanyan
**Unum Life Insurance Company of America**
**Lead Benefits Specialist**
**Phone 1-877-851-7637  ex14561**
**Fax     1-877-851-7624**
KIgitkhanyan@unum.com
*Your email is very important to us. We are experiencing higher email volumes than usual. For information and resources regarding Unum's COVID-19 response and FAQs, visit Unum.com/COVID-19.*
**Unum COVID-19 Response**
Stay up to date with the evolving coronavirus news and how it affects you here.
www.unum.com

Unum Corporation is pleased to offer an e-mail transmission service for your convenience in communicating information regarding your Unum policy. By using this service, the customer understands and agrees that these e-mail transmissions may contain personal and confidential data and that the transmission of such data via e-mail does not ensure or warrant the security or integrity of any information when sent via- e-mail. Further, the customer assumes all risk associated with the use of this e-mail transmission and agrees that Unum Corporation shall not be liable for any loss, claim, or damage that may result from the customer's decision to transmit data to Unum Corporation via e-mail.

Unum
The Benefits Center
PO Box 100158
Columbia, SC 29202-3158
Phone: 1-877-851-7637
Fax: 1-877-851-7624
www.unum.com

DRAFT - DO NOT COMMUNICATE



September 11, 2020

WILLIAM ABRAMS
SEATTLE, WA 98199

RE:  Abrams, William
     Claim Number:    17935867
     Policy Number:   631962
     Unum Life Insurance Company of America

We have completed our review of your Long Term Disability claim and are unable to approve your benefits. Please review this entire letter as it will help you understand how we reached this decision.

| Long Term Disability Claim Number: 17935867 | Contact Us |
|---|---|
| **Last Day Worked:** April 20, 2020 | **Mobile App and Online:** www.unum.com/claims Securely submit documentation and access claim information |
|  | **Direct:** Kristine Igitkhanyan 1-877-851-7637 extension, 14561 |
|  | **Call Center:** 1-877-851-7637 8am - 8pm ET, Mon-Fri |

**Information that Supports our Decision**

The Long Term Disability benefit payments have not been approved because our medical review determined you are not precluded from performing the material and substantial duties of your occupation as an Attorney as of June 03, 2020 and forward. Our vocational department defined the material and substantial duties of your regular occupation as follows:

**Material and Substantial Duties:**
Studies Constitution, statues, decisions, and ordinances of quasi-judicial bodies. Gathers evidence and information for management decision making. Prepares and reviews various legal



instruments and documents, such as contracts, leases, licenses, purchases, sales, real estate, etc. Examines legal data to determine advisability of defending or prosecuting lawsuit. Examines material, such as advertisements, publications, etc., for legal implications, advising officials of proposed legislation that might affect the organization. Applies for copyrights or registration of the organization's products, processes, devices, and trademarks, advising whether to initiate or defend law suits. Conducts pretrial preparations and defends the organization in lawsuits. Advises officials on tax matters, government regulations, and/or legal rights. Represents the company before quasi-judicial or administrative agencies of the government. Requires completion of law school with an LLB degree or JD degree and admission to the bar. Interprets laws, rulings, and regulations for individuals and businesses. Advises concerning transactions of business involving internal affairs, stockholders, directors, officers, and corporate relations with general public. May act as agent of the organization in various transactions. May confer with colleagues with specialty in areas of law to establish and verify basis for legal personnel. May prepare business contacts, pay taxes, settle labor disputes, and administer other legal matters. May teach college courses in law. May apply for patents. May specialize in specific phase of law.

**Physical Demands:**
*Sedentary Work*, mostly sitting with allowance for changes in position for brief periods of time throughout the day, may involve standing or walking for brief periods of time, lifting, carry, pushing, pulling up to 10 lbs occasionally.

**Cognitive Demands:**
- Directing, controlling, or planning activities of others
- Influencing people in their opinions, attitudes, and judgments
- Making judgments and decisions
- Dealing with people
- Performing a variety of duties
- Understanding, remembering and carrying out short and detailed instructions
- Persistence to meet strict deadlines, frequently on a daily basis

The majority of lawyers work full time and many work more than 40 hours per week. Lawyers who are in private practice and those who work in large firms often work additional hours, conducting research and preparing and reviewing documents. Lawyers may face heavy pressure during work, e.g. when trying to meet deadlines. (Source: Occupational Outlook Handbook.)

*Definitions of Frequency per The Revised Handbook for Analyzing Jobs:*
'Occasionally'= Activity or condition exists up to 1/3 of the time (0 - 2.5 hours a day in an 8-hour workday)
'Frequently' = Activity or condition exists from 1/3 to 2/3 of the time (2.5 - 5.5 hours a day in an 8-hour workday)
'Constantly' = Activity or condition exists 2/3 or more of the time (5.5+ hours a day in an 8-hour workday)

We understand you initially left work as of April 21, 2020 due to your conditions of fever, fatigue/malaise, and brain fog. We requested and received copies of your medical records from Dr. Margo Kober and Dr. Gregory Moss. Our medical review consisted of reviews by our Clinical Consultant, on-site board certified Internist, and Designated Medical Officer board certified in Internal Medicine.  Our review concluded that impairment is supported through June 2, 2020

and as of your office visit with Dr. Moss on June 3, 2020, you were no longer precluded from performing the full-time duties of your occupation as outlined above.

Records reflect you were seen by Dr. Kober on May 18, 2020 to establish care and noted to have anxiety/depression, hypertension, and obstructive sleep apnea. You reported being tested negative for COVID-19 on May 13, 2020 but felt you may have it. Your temperature during that visit was recorded as being 97.5. You were referred for a repeat COVID-19 test and additional laboratory work.

The June 10, 2020 blood work was negative for infection and the ECHO was negative. You were seen again on June 11, 2020 by Dr. Kober and reported malaise, fatigue, brain fog, trouble concentrating, and fevers of 100-102 degrees in the past 3-4 days to week. During your June 24, 2020 visit with Dr. Kober, you reported you kept a diary for fevers and that fevers increase to about 100.3 mid-afternoon and continue into the evening and is normal in the AM. It was noted you did not have a fever during this visit.

During your August 6, 2020 visit with Dr. Kober, you reported no changes and the trial of prescription medication Adderall did not help. During this visit, your temperature was recorded to be 98.2.

During your June 03, 2020 visit with Dr. Moss, it was noted that CT scans have all been negative, and you were tested for COVID-19 two times and both times, results were negative and also negative for antibodies. During this visit, you denied having any cough, chest pain, shortness of breath, vomiting, diarrhea, dysuria skin rashes, focal joint swelling, neurological or focal neurological symptoms. Dr. Moss opined you do not have COVID-19 due to duration of time you have been having symptoms, type of symptoms, and negative antibody testing. He also noted that based on your diagnostics, the following conditions are unlikely: occult endocarditis, occult lymphoma or carcinoma, occult chronic meningitis, coccidioidomycosis, and that he has no risk factors for zoonotic or tickborne disease. He also opined that you have mono-like syndrome which is unlikely to be caused by Epstein-Barr virus.

Additional laboratory/diagnostic testing that was reviewed included:

- 4/28/20: negative COVID-19 NAAT (nucleic acid amplification test).

- 5/11/20: negative COVID-19 NAAT; normal WBC, ESR, CRP; negative CMV IgG and IgM.

- 5/11/20 chest x-ray: negative.

- 5/18/20: negative for SARS-CoV-2 IgG antibody.

- 5/19/20 CT abdomen and pelvis: Essentially negative.

- 5/27/20 CT chest: essentially negative.

- 6/4/20 labs: negative CRP; negative Coccidioides antibody by CF.

- 6/10/20 labs: negative ANA and Rheumatoid Arthritis (RA) factor. ECHO was also negative.

In summary, our review concluded that extensive work up, diagnostics, and laboratory results were all normal/unremarkable. Your physicians ruled out all serious conditions, including COVID-19, occult endocarditis, occult lymphoma or carcinoma, occult chronic meningitis, and coccidioidomycosis. Records also indicate you have no risk factors for zoonotic or tickborne disease. The clinical office notes indicate that you have been free of fevers/afebrile and your clinical exams did not indicate any focal neurologic deficits or cognitive difficulty. Your treatment plan has been medications, hematology evaluation, and pulmonary function tests, all of which can typically be provided concurrently while performing the noted sedentary demand level of your occupation as defined above.

Our medical department also reviewed each of your conditions both separately and together and completed a whole person analysis. Our medical department concluded that your conditions of fever, fatigue, malaise, cognitive difficulty, hypertension, hyperlipidemia, chronic migraine headaches, abdominal pain, sleep disorder, non-essential tremor, depression, and anxiety both individually and collectively as a whole do not provide any restrictions and limitations that would affect the functionality of the whole person as of June 3, 2020. Thus, the information from the currently available records do not support that you would be precluded from June 3, 2020 and going forward.

Although impairment is supported through June 2, 2020, no benefits are payable since this is within the policy's elimination period. Elimination period means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum. The policy has an elimination period of 90 days, which would end on July 19, 2020. The information in your claim file indicates you are able to perform the duties of your occupation as of June 2, 2020, and since this is within the elimination period, no benefits are payable and your claim has been closed.

**Policy Provisions**

We relied upon your policy when making our decision, including provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

*HOW DOES UNUM DEFINE DISABILITY?*

> **Shareholders choosing the $15,000 monthly benefit, Shareholders choosing the $10,000 monthly benefit and All Attorneys not eligible in another group**
> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury; and
> - during the elimination period, you are unable to perform any of the material and substantial duties of your regular occupation.
>
> You must be under the regular care of a physician in order to be considered disabled.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

For attorneys, "regular occupation" means your specialty in the practice of law which you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed, instead of how the work tasks are performed for a specific employer or at a specific location.

For attorneys, "regular occupation" means your specialty in the practice of law which you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

The policy states:

### HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?

You must be continuously disabled through your **elimination period**. Unum will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 90 days.

**ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum.

**Next Steps Available to You**

If you disagree with our decision, you have the right to request an appeal.

**What is an Appeal?**

An appeal is your written disagreement with our claim decision and a request for a review of that decision.

**How do you request an Appeal?**

You will need to submit a written letter of appeal outlining the basis for your disagreement. To ensure handling of your appeal without delay, please include any additional information you would like considered. This information may include written comments, documents, or other information in support of your appeal.

**What information is available to you?**

Upon your written request, we will provide you with all documents, records and other information relevant to your claim for benefits.

**How much time do you have to request an Appeal?**

You have 180 days from the date you receive this letter.

If we do not receive your written appeal within 180 days of the date you receive this letter, our claim determination will be final.

**Where do you mail or fax your written request for an Appeal?**

The Benefits Center
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Fax Number: 1-207-575-2354

Our Appeals Unit will send you a letter acknowledging receipt of your appeal including your Appeals Specialist's contact information.

**How does the Appeal process work?**

An Appeals Specialist will review your entire claim, including any new information you submitted and may consult medical and vocational experts or other resources. The Appeal Specialist will make an independent decision on your claim.

**How much time does the Appeal review take?**

We are committed to making an appeal decision within 45 days after we receive your written appeal. There may be special circumstances in which the review can take longer. We will notify you if more time is needed.

**What if you continue to disagree with the determination after the Appeal is decided?**

You will have the right to have a court review the appeal determination by bringing a civil action under section 502(a) of the Employee Retirement Income Security Act (ERISA).

**To all Washington Residents**

To the extent Washington law applies to your claim, if you have questions or concerns about your claim, or would like information on your rights to file an appeal, contact the Washington Office of the Insurance Commissioner's consumer protection hotline at 1-800-562-5900 or visit www.insurance.wa.gov.

Please note if you appeal the decision and our claim decision is revered, additional information will be needed from you and your providers in order for us to complete the pre-existing evaluation on your claim. This is because your date of disability (April 21, 2020) is within 12 months of your effective date of coverage (October 01, 2019). Based on this information, we will need additional medical records to determine if you received consultation, care or services

for your disabling condition(s) from July 1, 2019 through September 30, 2019. To assist us with our evaluation, we will need you to complete the Supplemental Questionnaire that was requested from you in our July 28, 2020 letter.

We hope this letter has been clear and helpful to you. If you have questions about your claim or this process, please call our Contact Center at 1-877-851-7637, 8 a.m. to 8 p.m. Eastern Time, Monday through Friday. Any of our experienced representatives have access to your claim documentation and will be able to assist you. We will identify your claim by your Social Security number or claim number, so please have one of these numbers available when you call. If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 14561.

| Spanish: To obtain assistance in Spanish, call 1-800-858-6843. | Para obtener asistencia en Español, llame al 1-800-858-6843. |
|---|---|
| Chinese: To obtain assistance in Chinese, call 1-800-858-6843. | （中文）：如果需要中文的帮助，请拨打这个号码：1-800-858-6843。 |
| Tagalog: To obtain assistance in Tagalog, call 1-800-858-6843. | Kung kailangan ninyo ng tulong sa Tagalog, tumawag sa 1-800-858-6843. |
| Navajo: To obtain assistance in Dine, call 1-800-858-6843. | Dinek`ehgo shika at`ohwol ninisingo, kwiijigo holne` 1-800-858-6843. |

Sincerely,

*Kristine Igitkhanyan*

Kristine Igitkhanyan
Lead Benefit Specialist

*Claimant Name: William Abrams    Claim #: 17935867*

Exhibit E
Page 11 of 14

UA-CL-LTD-001200



```
                                   Activity
--------------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Legal         Name: Atty-Client Privileged Consult-Other
Status: Completed
Original Notify Date: 09/10/2020
Notify Date: 09/10/2020
Due Date:
Subject: Atty-Client Privileged Communication
Upon Completion Notify: Activity Creator
Upon Completion Notify Linked Claim Owner(s): No
Mark As Priority: No
Activity Owner: Walker, Steve
Action:

Request Fields
----------------------------------------------------------------------
Request: Igitkhanyan, Kristine 09/10/2020 18:15:06: ☒  I reviewed the claim
manual, consulted with QCC/SME & linked applicable documents ☒  Check if priority.
Reason:  DMO review completed and decision to EE needs to be communicated as soon
as possible.  ERISA governed? ☒  Yes     ☐  No     ☐  Unsure Claim Status:
Initial Liability If requesting meeting, list invitees:        List Alternate
Contact if Upcoming Absence:        Submitter's Telephone Extension:  Kristine x
14561
 Legal Question:  BS proceeding with non compensable decision (given GM OSP & DMO
reviews do not support impairment beyond 6/2/20, which is within the 90 day EP).
File discussion is needed to discuss any legal risk given circumstances of this
file.  Additionally, decision letter to EE needs to be reviewed prior to
communication.    Summary of Facts:   EE is a 65 yr old Attorney who has been on
disability since 4/21/20 due to fever, fatigue, malaise, and brain fog.  Requested
and recd med recs from 2 providers EE said he is tx with, Dr. Moss and Dr. Kober.
It should be noted pre-ex eval also needed for this claim, which SQ form reqd from
EE but no response recd. LB:7/1/19- 9/30/19- pre-ex eval not fully completed given
GM OSP & DMO reviews concluded R&L's not supported beyond 6/2/20, which is within
the EP.   In summary, our review concluded that extensive work up, diagnostics, and
laboratory results were all normal/unremarkable.  As of 6/3/20, GM OSP & DMO
concluded impairment is not supported.  There have been numerous email
communications w/PH and Client Manager/Sr. Acct Exec regarding the decision for
this claim. EE/PH have both expressed frustration in the amount of time it has
taken Unum to render a decision on this claim. EE/PH have also indicated they will
be filing a lawsuit against Unum upon comm of non comp decision, and additionally
will reach out to media. Please review emails/comm w/PH and tel call EE had with
Director on 9/8/20.




Created By: Igitkhanyan, Kristine
Created Date: 09/10/2020 18:15:06          Create Site: Chattanooga

Response Fields
----------------------------------------------------------------------
Response: Walker, Steve 09/11/2020 16:36:21: I have been asked for legal advice
with regard to the question of whether there is support for an adverse decision on
the claim.  In that regard, I have reviewed the relevant entries in the file,
including the policy, the varying medical reviews, medical notes/records, and
communications to/from the ER and claimant.  After doing so, it is my opinion that
there is support for an adverse decision that is based upon a finding that the
claimant was not disabled throughout the elimination period.  In addition, while we
assert in our medical reviews and the decision that the claimant was not disabled
as of June 3, 2020 (during the EP), there does not appear to be a significant
showing that the claimant was, in fact, disabled prior to June 3, 2020.  To that
```

end, I have revised the decision letter accordingly.  Please review my edits to the
letter and let's discuss one final time.

Stephen Walker, DLR
September 11, 2020


Completed By: Walker, Steve
Completed Date: 09/11/2020 16:36:21        Complete Site: Portland