HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM F. ABRAMS,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>                              Defendant. | Case No.  2:21-cv-00980-TL<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO FRCP 52(a)**<br><br>NOTED ON MOTION CALENDAR: MARCH 11, 2022<br><br>ORAL ARGUMENT REQUESTED |

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ...........................................................................................................1

II.   FACTS ...........................................................................................................................2

      A.    Relevant Policy Provisions. ...............................................................................3

      B.    Plaintiff's Inaccurate Summary of His Medical History: Looking For An "*Exit Ramp*" With Similar Symptoms For Years Before And After His July 2020 LTD Claim. ..............................................................................................4

      C.    Plaintiff Is Not Entitled to Benefits Merely Because Treaters Recorded His Self-Reported Complaints:  Misrepresentations  Regarding  Treaters "Diagnosing" Plaintiff With COVID-19 or ME/CFS. ...........................................5

      D.    Plaintiff's Flawed Contention That He Has Been "Diagnosed" With ME/CFS. ...........................................................................................................8

            1.    ME/CFS criteria requires proof of cognitive impairment ...........................8

            2.    Plaintiff's battery of neuropsychological testing proved he has no cognitive impairment ...............................................................................8

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) -
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

3.    Plaintiff's record of omitting Drs. Winnett and Reif's "normal" cognitive testing suggests even Plaintiff knows this testing is fatal to his claim ................................................................................9

4.    Plaintiff mistakenly relies on treaters who never reviewed the entire record, including the "normal" neuropsychological testing ....................10

E.    Unum's Holistic Review of the Entire Record by Medical, Occupational and Vocational Rehabilitation Experts Justifies Denial of the Claim ...................12

III.    ARGUMENT ...................................................................................................14

A.    Standard of Review. ...............................................................................14

B.    Plaintiff Has Failed to Meet His Burden of Establishing That He Is Disabled Under the Terms of the Policy. ...............................................................15

C.    Unum's Medical, Occupational and Vocational Reviewers Holistically Reviewed Plaintiff's Medical Records, Examinations, and Test Results, and an Independent Medical Examination was Unnecessary and Not Required. ........20

D.    Unum Properly Considered Plaintiff's Occupation and Whether He Was Totally Disabled from Performing the Occupation. ...............................................21

E.    Unum Properly Denied Plaintiff's Benefits After Considering Medical, Occupational and Vocational Information Plus Plaintiff's Witness Statements, His Own Symptom/Temperature Log, and Research Articles. ..........23

IV.    CONCLUSION ...............................................................................................24

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) -
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5

*Black & Decker Disability Plan v. Nord,*
    538 U.S. 822 (2003)..................................................................................21

6

*Boardman v. Prudential Ins. Co. of Am.,*
7
    337 F.3d 9 (1st Cir. 2003) ..................................................................15, 20

8

*Bratton v. Metropolitan Life Ins. Co.,*
9
    439 F.Supp.2d 1039 (C.D. Cal. 2006) ...................................................16

10

*Constantino v. Aetna Life Ins. Co.,*
    2014 WL 5023222 (C.D. Cal. Oct. 8, 2014)..........................................20

11

*Friedrich v. Intel,*
12
    181 F.3d 1105 (9th Cir. 1999) ......................................................8, 16, 18

13

*Holden v. Unum Life Ins. Co. of Am.,*
14
    2021 WL 2836624 (6th Cir. July 8, 2021).............................................22

15

*Holifield v. Unum Life Ins. Co. of Am.,*
    640 F.Supp.2d 1224 (C.D. Cal. 2009) ...................................................17

16

*Inciong v. Fort Dearborn Life Ins. Co.,*
17
    570 F. App'x 724 (9th Cir. 2014) ..........................................................21

18

*Johnson-Tingley v. Berryhill,*
19
    2017 WL 7052256 (E.D. Wash. Nov. 17, 2017) ...............................9, 19

20

*Judge v. Metropolitan Life Ins. Co.,*
    710 F.3d 651 (2013).................................................................................21

21

*Kushner v. Lehigh Cement Co.,*
22
    572 F. Supp. 2d 1182 (C.D. Cal. 2008) .................................................21

23

*Langlois v. Metro. Life Ins. Co.,*
24
    2012 WL 1910020 (N.D. Cal. May 24, 2012) .................................15, 16

25

*Martucci v. Hartford Life & Accident Ins. Co.,*
    863 F.Supp.2d 269 (S.D.N.Y. 2012)......................................................15

26

*Matthews v. Shalala,*
27
    10 F.3d 678 (9th Cir. 1993) ..............................................................14, 17

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - i
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*Muniz v. Amec Const. Mgmt. Inc.*,
   623 F.3d 1290 (9th Cir. 2010) ...................................................................................14

*Pearson v. Aetna Life Ins. Co.*,
   2016 WL 2745299 (W.D. Wash. May 10, 2016)......................................................21

*Salomaa v. Honda Long Term Disability Plan*,
   642 F.3d 666 (9th Cir. 2011) ...................................................................................19

*Savafi v. SBC Disability Income Plan*,
   493 F.Supp.2d 1107 (C.D. Cal. 2007) ......................................................................16

*Seleine v. Fluor Corp. LTD Plan*,
   598 F.Supp.2d 1090 (C.D. Cal. 2009), *aff'd*, 409 F. App'x 99 (9th Cir. 2010) ...............14, 16

*Shaw v. Life Ins. Co. of N. Am.*,
   144 F. Supp. 3d 1114 (C.D. Cal. 2015) ...................................................21, 23, 24

*Tam v. First Unum Life Ins. Co.*,
   491 F. Supp. 3d 698 (C.D. Cal. 2020) ......................................................................19

*Western v. Unum Life Ins. Co.*,
   2018 WL 6071090 (C.D. Cal. July 7, 2018), *aff'd*, 796 F.App'x 154 (9th Cir. 2020) .......................................................................................................16, 18

**Statutes**

*ERISA* ...................................................................................................................18, 20, 21

**Other Authorities**

Rule 52 ...................................................................................................................1, 2

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - ii
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## I. **INTRODUCTION**[1]

Plaintiff William F. Abrams ("Plaintiff" or "Abrams") has not met his burden of proof that he is disabled under the terms of the LTD policy issued by Defendant Unum Life Insurance Company of America ("Defendant" or "Unum"). The overwhelming weight of evidence in the record—including opinions by Plaintiff's own treaters—demonstrates that Plaintiff can perform the duties of his regular occupation, as assessed on a national economy standard. Accordingly, Unum's Rule 52 Motion (Dkt. #25) should be granted and Plaintiff's Motion (Dkt. #26) should be denied.

Plaintiff's brief misstates Plaintiff's actual medical history prior to Plaintiff filing his disability claim in July 2020, when he also says he had a robust legal practice. Prior to making his disability claim Plaintiff told physicians he was looking for an "*exit ramp*" from the practice of law. Shortly thereafter, Plaintiff filed this claim for disability benefits stating he had contracted COVID-19 and complained of fatigue and "daily" fevers (which could not be independently verified). Plaintiff then repeatedly pushed his treaters to make a COVID-19 diagnosis, despite testing negative for COVID-19 at least four (4) separate times, and despite wholesale medical testing that could not replicate Plaintiff's claimed fevers or difficulties consistent with poor blood oxygen saturation. After Unum had medical and vocational experts review Plaintiff's entire record, Unum justifiably denied Plaintiff's July 2020 claim for LTD benefits in September 2020.

On March 3, 2021, Plaintiff appealed Unum's decision denying benefits, this time asserting a newly-minted diagnosis of Chronic Fatigue Syndrome ("ME/CFS"). To get to that diagnosis, some of Plaintiff's treaters incorrectly assumed the veracity of Plaintiff's self-reports that he had "cognitive impairment," a finding required to make a CFS diagnosis. Some of Plaintiff's other treaters were unwilling to blindly accept Plaintiff's self-reports of cognitive impairment. They ordered objective neuropsychological testing to assess whether Plaintiff actually had cognitive impairment. Those tests universally showed that Plaintiff had no clinically significant cognitive

---

[1] Evidence and arguments set in this Response should be considered with evidence and arguments presented in Unum's Rule 52 Motion for Judgment on the Record. *See* Dkt. #25. These motions are interrelated.

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 1
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

impairment which, in turn, meant he could not have CFS. Plaintiff and his counsel did not share these "normal" neuropsychological tests with Plaintiff's other treaters.

Plaintiff also failed to present sufficient unbiased and credible information that he was unable to perform his occupation as an attorney, as defined in the "national economy." Unum had seven (7) board certified and/or qualified healthcare experts conduct holistic reviews of Plaintiff's entire record. Occupational and vocational assessments, and objective testing, also disproved Plaintiff's self-reported symptoms and alleged restrictions and limitations. Plaintiff's treaters never reviewed the entire record submitted to Unum (or this Court). Unum properly denied Plaintiff's appeal.

On February 2, 2022, Unum filed its Rule 52 Motion for Judgment on the Record. *See* Dkt. #25. That same day, Plaintiff filed his own Motion for Judgment pursuant to FRCP 52(a). *See* Dkt. #26.[2] Unum incorporates by reference the statement of facts and legal argument included in its Motion for Judgment Pursuant to Rule 52. *See* Dkt. #25. Unum respectfully submits this Response to Plaintiff's Motion. Unum requests that this Court deny Plaintiff's Motion and grant Unum's Motion and conclude that Unum properly determined Plaintiff failed in his burden of proof to establish disability under the terms of the policy.

## II. **FACTS**

Unum does not accept Plaintiff's statement of facts. As shown below, Plaintiff's Motion takes remarkable liberties with the actual factual record, stretching the truth to its breaking point. These and other misrepresentations should weigh heavily on the Court's determination in a case based totally and solely on Plaintiff's self-reported symptoms, especially when actual testing disproves many of Plaintiff's self-reported symptoms that can be tested.

///

///

///

---

[2] On February 8, 2022, Plaintiff filed a Praecipe correcting three errors in his Motion. *See* Dkt. #30. Unum will refer to Plaintiff's originally filed Motion (Dkt. #26), except where the Praecipe revisions are pertinent.

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 2
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1  **A.      Relevant Policy Provisions.**

2         Unum issued LTD benefit policy number 631962-002 to the Schwabe law firm on January

3  1, 2015.  AR 89-132.  This policy covered Plaintiff as a shareholder employee.  AR 92.  The LTD

4  policy is a "regular occupation" policy which defines "disability" as follows:

5         You are disabled when Unum determines that:

6         - you are *limited* from performing the *material and substantial duties* of your *regular*
          *occupation* due to your *sickness or injury*; and
7         - you have a 20% or more loss in your *indexed monthly earnings* due to the same
          sickness or injury; and
8         - during the elimination period, you are unable to perform any of the material and
          substantial duties of your regular occupation.

9
       You must be under the regular care of a physician in order to be considered disabled.
10
       The loss of a professional or occupational license or certification does not, in itself,
11     constitute disability.

12  AR 105 (emphasis in original).  The Plan defines "Regular Occupation" as follows:

13         **REGULAR OCCUPATION** means the occupation you are routinely performing
          when your disability begins. *Unum will look at your occupation <u>as it is normally</u>*
14        <u>*performed in the national economy, instead of how the work tasks are performed*</u>
          <u>*for a specific employer or at a specific location. . . .*</u>
15
           For attorneys, "regular occupation" means your specialty in the practice of law
16        which you are routinely performing when your disability begins. *Unum will look at*
          *your occupation as it is normally performed in the national economy, instead of*
17        *how the work tasks are performed for a specific employer or at a specific location.*
          AR 125 (emphasis added).
18
       The "Regular Occupation" definition persists for a 24-month period until the "any
19
    occupation" policy definition applies thereafter:
20
           After 24 months of payments, you are disabled when Unum determines that due to
21        the same sickness or injury, you are unable to perform the duties of *any gainful*
          *occupation* for which you are reasonably fitted by education, training or experience.
22
           You must be under the regular care of a physician in order to be considered
23        disabled.

24         The loss of a professional or occupational license or certification does not, in itself,
          constitute disability.
25
    AR 105 (emphasis in original).  Plaintiff must establish that he is "continuously disabled through
26
    [the 90 day] elimination period." AR 105. Plaintiff was 65 years old when he submitted this
27

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 3
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

disability claim. The policy provides a maximum of 36 months of payments if Plaintiff is deemed eligible for the disability benefit. AR 111.

**B.    Plaintiff's Inaccurate Summary of His Medical History: Looking For An "*Exit Ramp*" With Similar Symptoms For Years Before And After His July 2020 LTD Claim.**

Plaintiff represents to the Court that as of the beginning of 2020 he was in "peak condition" with a "thriving" legal practice. Dkt. #26 at 3-4. Plaintiff then claims that "[s]uddenly" in April 2020 he first began experiencing body aches, fatigue, cognitive impairment, neuropathy, chronic hand and foot pain, worsening migraines and increased headaches, sleep problems, hand tremor, chest pain, and depression. *Id.*

This representation is just not accurate, based on Plaintiff's historical medical records *before* April 2020. For example, during Plaintiff's years of "highly accomplished" practice (prior to April 2020), Plaintiff was diagnosed with Major Depressive Disorder *"for at least the past 10 years"* and treated this with antidepressants. AR 3505, 1401 (emphasis added). As of November 2019, Plaintiff was still being successfully treated for "depression, (fatigue) mental health . . . migraines, [and] poor sleep quality," while looking for a new psychiatrist. AR 3564-3565, 3568-3569. Plaintiff also has a five (5) year history of diagnosed sleep problems (like sleep apnea) and restless leg syndrome, and he has been reporting "fatigue" since at least 2018. AR 1401, 3539, 3565, 3699. Plaintiff has reported having migraines and has been diagnosed with Chronic Headache Disorder since at least 2016 and treated this with lots of Botox injections. AR 3564, 3605, 1401, 1411. He previously complained of pain, was diagnosed with arthritis, and treated with Tylenol. 910-911. And for "the last 3 to 4 years" Plaintiff has had a "left hand tremor." AR 910. The tremor did not "suddenly" start in April 2020, as he told this Court, nor did it start "on May 13, 2020" as he told one treater, Dr. Jason Goldman. AR 1401. Plaintiff's representations of his medical history to this Court are not credible.

In late October and November 2019—during Plaintiff's "thriving" practice and when in "peak condition"—Plaintiff told his physicians he had "*lots more stress*," that he wanted "*a new therapist,*" and admitted that he was looking to "*find an exit ramp*" from his legal practice. AR 3591, 3597 (emphasis added). Plaintiff said he was getting "bad brain zaps" and that "[m]eds

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 4
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

made him crazy." *Id.* It is important to note that Plaintiff and some of his treaters have already concluded that any purported mental condition he had before April 2020, or since, is not disabling: No doctor presently opines that any purported mental (psychological) condition is creating restrictions and limitations that preclude him from performing the occupation of lawyer, as viewed in the national economy.

**C. Plaintiff Is Not Entitled to Benefits Merely Because Treaters Recorded His Self-Reported Complaints: Misrepresentations Regarding Treaters "Diagnosing" Plaintiff With COVID-19 or ME/CFS.**

Reading Plaintiff's Motion, one is compelled to highlight wholesale misstatements claiming that many physicians "diagnosed" him with ME/CFS or COVID-19. For example, Plaintiff incorrectly states that "[f]our [specialists] diagnosed ME/CFS and [t]hree associated his [s]ymptoms with COVID." Dkt. #26 at 6. This representation is not true, and as we show below the ME/CFS diagnoses by Drs. Goldman and Norman Simon were in error because they apparently were never informed of "normal" objective neuropsychological testing which showed Plaintiff had no cognitive impairment, which effectively disproved their ME/CFS diagnosis.

**First,** regarding Plaintiff's purported COVID-19 diagnosis (let alone long-haul or postviral syndrome), it is undisputed that Plaintiff had four (4) negative COVID-19 tests. Dr. Margo Kober never opined on a more probable than not basis that Plaintiff had symptoms from COVID-19. Dr. Kober merely theorized that it could be "plausible" that Plaintiff had COVID-19. AR 590. Plaintiff's treater, Dr. Greg Moss, bluntly stated that he did "*not* think this is COVID-19 . . . ." AR 913 (emphasis added). Plaintiff's treater, Dr. Goldman, concluded it was "*not* likely to be post-infectious syndrome after COVID-19 . . . ." AR 1398 (emphasis added). Dr. Livia Hegerova found a normal physical exam and normal relevant testing and a negative COVID-19 test. AR 1450, 1460.

**Second,** Plaintiff's Motion mistakenly states that "Dr. [Janna] Friedly" assessed Plaintiff's post-COVID symptoms. Dkt. #26 at 11 (citing AR 3788-3789). But this cite is to a vocational report by Barbara Beach, not Dr. Friedly, and Beach merely records Plaintiff's incomplete and inaccurate self-reports, and never applies the "national economy" standard. Beach also never had

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO FRCP 52(a) - 5
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

access to Plaintiff's whole record—a recurring issue for *all* of Plaintiff's treaters in this case—and Plaintiff never told Beach about his multiple, negative COVID-19 tests. Instead, Plaintiff misdirected on the issue of his negative COVID-19 tests, telling Beach instead that when he started having his alleged symptoms COVID-19 "testing was not widely available." AR 3789. Plaintiff also incorrectly claims that "Dr. Friedly's [May 2, 2021] impression was 'post-COVID fatigue, sleep disturbance, brain fog . . . .'" Dkt #26 at 12 (citing AR 3798). But Dr. Friedly never "diagnosed" Plaintiff with "post-COVID fatigue"; this is merely a summary of what Plaintiff self-reported to Dr. Friedly. Dkt. #26 at 11-12; AR 3796-3798.

**Third,** Dr. Mary Reif never "diagnosed" Plaintiff with COVID-19 or post viral syndrome either. Dkt. #26 at 10-11 (citing AR 1555). Dr. Reif recited from Plaintiff's prior records (or what Plaintiff reported to her). The text quoted by Plaintiff from Dr. Reif shows only that she was simply evaluating him for self-reported symptoms that might relate to those diagnoses, not that she had concluded that Plaintiff had COVID-related illness or post-viral syndrome. AR 1554-1555.

**Fourth,** Dr. George Pappas never "diagnosed" Plaintiff with "presumed COVID-19 infection" as asserted in Plaintiff's Motion. Dkt. #26 at 11 (citing AR 3760). Dr. Pappas composed a patient history summarizing existing medical records (or what Plaintiff reported to him). It is remarkable, however, that Dr. Pappas encouraged Plaintiff to take a T Detect COVID-19 assay. AR 3760. This test would have definitively proved whether Plaintiff ever had COVID-19 infection (and could differentiate from Plaintiff's vaccination). For some reason Plaintiff chose not to take this test. In sum, no medical records contain definitive diagnoses for COVID-related illness or post-viral syndrome. At most, it was a possibility that the doctors considered, but doctors recognized that there was simply no testing or medical evidence to support it.

**Fifth,** Plaintiff's Motion weakly attempts to create the false impression that physicians actually "observed" Plaintiff's self-reported symptoms. For example, Plaintiff's Motion asserts that Dr. Kober and other physicians actually confirmed or "documented" Plaintiff's ongoing disabling symptoms including "[daily] fevers," cognitive impairment, fatigue, and other self-reported symptoms. *See* Dkt. #26 at 4-11; AR 2521 ("daily fevers"). This is not accurate. A review

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 6
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

of these records shows these doctors did not "observe" these symptoms. These doctors merely recorded what Plaintiff told them.

For example, Plaintiff's Motion states that he was "diagnosed" or that "[a]ll specialists *observed* severe symptoms" or that "Dr. Kober repeatedly *confirmed*" the symptoms. *See* Dkt. 26 at 17-18 (Section III(A)) (emphasis added). But in fact, those physicians never actually observed Plaintiff "still having fever up to 104°[F]" or that "his processing speed is affected" or that "[i]t is taking him 2 hours to compose a straightforward 4 paragraph document" or that he has "no stamina to work longer than 15 minutes" or that he has "cognitive impairment (concentration, word-finding, memory, and learning deficits)." *Id.* (citing AR 45, 1149, 1248, 1633). These statements are *not* clinical observations or measurements as Plaintiff represents to this Court, but rather recordings of Plaintiff's self-reporting.

Contrary to Plaintiff's incorrect representations to this Court, Plaintiff's self-reported symptoms were never measured or observed by physicians. But it was not for a lack of trying. The unique problem with Plaintiff's claim, based on self-reported symptoms, is that *some* of Plaintiff's alleged "symptoms" *are* measurable, and testing *disproved* these self-reported symptoms. At least twelve (12) attempts were made to measure Plaintiff's claimed "*daily*" fevers. AR 589-617, 1332-1341, 1389-1392, 1393-1396, 1397-1410, 1550-1554, 3747-3750 (no fevers observed in 12 normal temperature readings); *compare* AR 2521 (assertion that Plaintiff had "*daily fevers.*")

And when Plaintiff self-reported cognitive impairment, objective neuropsychological cognitive testing by Drs. Reif and Rochelle Winnett showed he had "*normal*" cognitive performance with no clinically significant cognitive impairment. AR 2310-2320, 1527-1532 (normal cognitive functioning). Multiple doctors performing physical exams also observed no cognitive impairment on exam. *See, e.g.,* AR 3886-7 (summary review of over 10 "normal" physical exams). Testing also confirmed he did not have low oxygen saturation or COVID-19. AR 589-592 (oxygen saturation normal). Many other tests affirmatively disprove some of his self-reported symptoms. *See, e.g.*, AR 911-917 (6/3/20 visit - full blood panel normal and CT scans normal), 596-599 (6/11/20 visit – negative covid tests and normal blood test results), 1450-1461

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 7
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

(8/25/20 – blood tests normal, brain scans normal, physical exam normal). Plaintiff's attempt to identify objective medical "observations" of his symptoms or diagnosis is misleading.

**D.    Plaintiff's Flawed Contention That He Has Been "Diagnosed" With ME/CFS.**

1.    *ME/CFS criteria requires proof of cognitive impairment*. Proof of cognitive impairment is a required element when making a ME/CFS diagnosis. *See, e.g.*, AR 3903; 1910. EEGs and neuropsychological tests are "objective" ways to measure cognitive functions to determine if the diagnosis meets the ME/CFS criteria. *See, e.g.*, *Friedrich v. Intel*, 181 F.3d 1105, 1111 (9th Cir. 1999)(Court reviews doctors' "objective medical tests [and] …neuropsychological tests…specifically designed to measure cognitive functions which produced results consistent with both immune deficiencies and CFS.")

2.    *Plaintiff's battery of neuropsychological testing proved he has no cognitive impairment*. Both of Plaintiff's treaters, Drs. Reif (neurologist) and Rochelle Winnett (neuropsychologist), actually tested Plaintiff in December 2020 for cognitive impairment and found him "completely within normal limits." AR 2310-2320, 1527-1532.  This testing flatly disproved Dr. Goldman's and Dr. Simon's earlier uninformed diagnoses, which erroneously assumed Plaintiff's self-report of cognitive impairment.  Dr. Winnett administered at least nineteen (19) different tests, including the Wechsler Adult Intelligence Scale, the Minnesota Multiphasic Personality Inventory (MMPI) and many other tests.  Dr. Winnett examined Plaintiff physically and reviewed all of Plaintiff's tests, plus other tests. AR 2315-2317 (*e.g., normal neuropsychological testing, normal EEG, normal MRI brain scan*). Dr. Winnett specifically noted, however, that Plaintiff's MMPI test results revealed that Plaintiff "*had a prominent <u>over-reporting</u> response style for both physical and cognitive complaints[.]"* AR 2317 (emphasis added). Dr. Winnett thought that this type of "overreporting" of physical and cognitive complaints is "infrequent in medical patient populations." AR 2319.

Dr. Winnett reviewed each specific test, and different results in each, and concluded: "*<u>I am not seeing any compelling evidence for Mild Cognitive Impairment at this time</u>.*" AR 2319 (emphasis added).  Plaintiff's brief actually misstates Dr. Winnett's overall conclusions: Plaintiff's

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 8
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

testing revealed *normal* findings and no clinically significant cognitive impairment. *Compare* Dkt #26 at 12 *with* AR 2310-2320. Dr. Winnett did not find *any* test result as being clinically significant for cognitive impairment. *Id.* at 2319.

Another test conducted by Dr. Reif, the Montreal Cognitive Assessment, also confirmed Plaintiff was cognitively normal. AR 1540. As Dr. Reif best explained: the objective psychological testing confirmed Plaintiff was "*cognitively normal . . . .*" AR 1527-1532. Plaintiff's Motion makes another mistake by claiming that Plaintiff's performance on this test, 26/30, showed "cognitive problems." Dkt. #26 at 10. It is universally recognized that a score of 26/30 is "*considered normal." See Johnson-Tingley v. Berryhill*, 2017 WL 7052256, at *5, n. 1 (E.D. Wash. Nov. 17, 2017) ("A score of 26/30 [on the Montreal Cognitive Assessment] is considered *normal*.") (emphasis added).

3.      *Plaintiff's record of omitting Drs. Winnett and Reif's "normal" cognitive testing suggests even Plaintiff knows this testing is fatal to his claim.* Plaintiff must know Dr. Winnett's and Dr. Reif's "normal" cognitive neuropsychological testing totally undermines his claim of impairment and his ME/CFS diagnosis. **First**, Plaintiff's treaters (including those considering or diagnosing Plaintiff's ME/CFS) were never informed of the "normal" cognitive tests by Drs. Reif and Winnett which show that Plaintiff has no cognitive impairment, a required finding for a ME/CFS diagnosis. AR 1910, 1398-1399. Plaintiff met with Dr. Simon once (on November 11, 2020) and only twice with Dr. Goldman (October 8, 2020—when he diagnosed ME/CFS—and December 15, 2020). *See* AR 1398-1410, 1550-1554 (Dr. Simon); AR 1502-1510, 1514-1523 (Dr. Goldman). Those visits pre-date the December 24, 2020 neurocognitive testing. Records also confirm that for months after their initial ME/CFS diagnoses—based solely on Plaintiff's self-reported symptoms— Drs. Goldman and Simon never reviewed the December 24, 2020 "normal" cognitive testing. *Id.*

**Second,** in March 2021, Plaintiff submitted "900-pages" for his administrative appeal to Unum but conveniently omitted Dr. Winnett's testing records—which showed no cognitive impairment—a required criterion for ME/CFS. During the administrative appeal review, Unum

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 9
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

discovered Dr. Winnett's records were "missing" (the only records missing) and requested them from Plaintiff's counsel.  AR 2228, 2309-2320.  Only then were the records provided, and Unum discovered that Plaintiff significantly misconstrued Dr. Winnett's findings in his appeal letter. There is a reason why Plaintiff's Motion never cites to Dr. Winnett's actual conclusions from the testing. *See* Dkt. #26 at 10-12.

4.    *Plaintiff mistakenly relies on treaters who never reviewed the entire record, including the "normal" neuropsychological testing.*  Plaintiff's Motion significantly misstates the scope of which doctors actually diagnosed Plaintiff with ME/CFS.  Plaintiff erroneously represents to the Court that four physicians diagnosed Plaintiff as meeting the criteria for ME/CFS.  *See* Dkt. #26 at 6, 8-9, 11.  A close review of the records shows that only two physicians, <u>Dr. Goldman</u> and <u>Dr. Simon</u>, actually reviewed (and mis-applied) the diagnostic criteria for CFS.  Dkt. #26 at 8 (Goldman); Dkt. #26 at 9 (Simon).  As mentioned above, Drs. Goldman and Simon diagnosed ME/CFS on October 8, 2020, and November 11, 2020 respectively.  At that time, they had no neuropsychological testing and relied totally on Plaintiff's erroneous self-reporting of "cognitive impairment."  Then, Drs. Goldman and Simon were never informed of Dr. Winnett's battery of neuropsychological testing that showed Plaintiff had *no* cognitive impairment, which make their diagnoses uninformed and invalid.

This is especially remarkable because during his last visit with Plaintiff on December 15, 2020, Dr. Goldman underscored the importance of neuropsychological test results he never received. Dr. Goldman noted Dr. Reif's preliminary observations, knew that neurological testing was scheduled, and that normal results could require a different diagnosis:

> Dr. Reif has him scheduled for a cervical MRI and a neurocognitive battery of tests. In neuro appointment, had some issues with short term memory and balance. . . .

> Other providers seem to concur on the diagnosis of ME/CFS (including Dr. Kober and Dr. Simon), *however Dr. Reif seems to be withholding the diagnosis while exploring other causes.* . . .

> 3. Continue to see Dr. Reif, regarding neurocognitive baseline and follow-up testing and *pursuing the other diagnosis she has suggested.*
> 4. *If the work-up in Neurology is negative, you might benefit from a second opinion, and perhaps a more in depth diagnostic work-up, from large referral center, i.e. Mayo.*  AR 1550-1551 (emphasis added).

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 10
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Someone repeatedly chose not to share the key neuropsychological testing with Drs. Goldman, Simon, and Plaintiff's other treaters. In April 2021, when <u>Dr. George Pappas</u> conducted his review of dozens of tests, records confirm he was never told about, or given an opportunity to review, Plaintiff's "normal" cognitive testing from December 2020. AR 3760-3773. Also, in April 2021, <u>Sara Stolz</u> (sleep specialist) was never informed of Plaintiff's "*normal*" cognitive testing from December 2020. AR 3790-95. Ms. Stolz and Dr. Pappas were merely told about Drs. Goldman and Simon diagnoses (that did not include the cognitive testing and incorrectly assumed cognitive impairment.)  In May 2021, <u>Dr. Magdalena Szkudlinska</u> reviewed lots of tests, but again not the "normal [December 2020] cognitive tests" from Drs. Reif and Winnett. AR 3774-3787. Plaintiff's reliance on <u>Dr. Livia Hegerova</u> as somehow supporting his claim because she "rul[ed] out" cancers is a classic overreach.  *See* Dkt. #26 at 7.  Dr. Hegerova's physical exam of Plaintiff actually was unremarkable like so many of the other exams. AR 1434.  She confirmed that all relevant testing was clinically normal, including a negative COVID-19 test, and a normal brain MRI. AR 1438, 1441.

Further, Dr. Pappas (Dkt. #26 at 11 (AR 3760-3773)), Dr. Skudlinska (Dkt. #26 at 11 (AR 3774-3787)), and Ms. Stolz (Dkt. #26 at 11 (AR 3790-3795)) also never performed a diagnostic evaluation based on the ME/CFS criteria.  And Dr. Friedly did *not* make an ME/CFS diagnosis as of May 2021, especially in light of the "normal" neuropsychological testing in December 2020. Dr. Friedly found Plaintiff cognitively unremarkable on exam. AR 3798. All told, the record clearly reflects that Drs. Goldman, Simon, Kober, Pappas, Friedly, and Ms. Stolz never made a holistic review of the entire record. Their opinions are premised on Plaintiff's self-report that was later totally undermined by neuropsychological testing, and/or these individuals never actually diagnosed Plaintiff with ME/CFS (as discussed above). Accordingly, any purported ME/CFS "diagnosis" by Drs. Goldman and Simon (let alone Drs. Pappas, Szkudlinska, Sara Stolz, or Friedly) is flawed and simply not credible because each was never informed about the "*normal*" cognitive testing, especially when reviewing a case involving self-reporting.

///

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1

2

**E.    Unum's Holistic Review of the Entire Record by Medical, Occupational and Vocational Rehabilitation Experts Justifies Denial of the Claim.**

3

4

Plaintiff's Motion incorrectly states that Unum used unqualified reviewing experts. Dkt. #26 at 15-17. To the contrary, the reviewing board certified physicians were qualified examiners with specific qualifications. Besides that, unlike Plaintiff's treaters, these experts conducted holistic reviews of Plaintiff's *entire* record, including testing performed by Plaintiff's treating physicians. Unum also had occupational and vocational rehabilitation expert reviews to analyze the occupational duties and physical demands. AR 1003-1005.

5

6

7

8

9

Among the seven (7) health care professionals reviewing Plaintiff's records, Unum had Dr. Maribelle Kim, board-certified in internal medicine, which includes the subspecialty of infectious diseases, perform her reviews of Plaintiff's records on September 8, 2020 and September 18, 2020. AR 1151-1157 (Dr. Kim's first review); 1250-1252 (Dr. Kim's second review of second letter from Dr. Kober). Dr. Kim made a detailed review of all tests and self-reported symptoms and noted Plaintiff's "*reported symptoms are inconsistent with and out of proportion to his diagnostics, labs and clinical exam findings.*" AR 1156 (emphasis added). Dr. Kim also noted Plaintiff's in-person exams "*did not indicate any focal neurologic deficits or cognitive difficulty.*" AR 1156 (emphasis added). Dr. Kim opined, on a more probable than not basis, that Plaintiff could perform his "sedentary occupation full-time[.]" AR 1251-2.

10

11

12

13

14

15

16

17

18

Unum had Dr. Matthew Lundquist, also board certified in internal medicine, including the subspecialty of infectious diseases, and board certified in occupational medicine, perform reviews. Dr. Lundquist completed his internal medicine residency and occupational and environmental medicine fellowship at Yale University, where he earned a Master's Degree in Public Health. Dr. Lundquist also serves as Section Chief at Middlesex Health in Connecticut. He reviewed all records on September 10, 2020 (AR 1183-1187) and again on September 22, 2020 (AR 1254-1259). Dr. Lundquist concluded: "There are no significant physical exam findings to support an inability to perform occupational duties. Thorough work-up to date, including lab studies have been unrevealing and otherwise normal. Furthermore, despite the complaints of 'brain fog' and difficulty with concentration, there are no observations documented or mental status exams that

19

20

21

22

23

24

25

26

27

otherwise support such symptoms." AR 1185.

Unum also had <u>Dr. Scott Norris</u>, perform reviews. Dr. Norris is board certified in family practice with a Master's Degree in Public Health and performed his record reviews on June 7, 2021, and June 17, 2021. AR 3901-3906 (first review); 3845-3853 (second review). Dr. Norris reviewed the entire record, including tests by Drs. Reif and Winnett and considered all of Plaintiff's claimed restrictions and limitations. Dr. Norris noted how Plaintiff had no actually observed fevers, that "[c]contemporaneous physical examinations" were unremarkable, and that "[e]xtensive diagnostic testing…did not identify active or recent [symptoms] due to COVID-19 and other infectious etiologies[.]" AR 3849. Dr. Norris specifically noted the significance of neuropsychological and cognitive testing showing Plaintiff had no "compelling evidence for Mild Cognitive Impairment[.]" AR 3851. This testing also confirmed that Plaintiff failed to meet the diagnostic criteria for ME/CFS "because [c]ognitive impairment . . . is required for the diagnosis of ME/CFS per the 2015 Institute of Medicine diagnostic criteria, which is currently endorsed by the CDC." AR 3903.

Dr. Norris also noted that Plaintiff had a long prior history of the same conditions or self-reported symptoms while he had his "thriving" practice. He noted Plaintiff reported migraines and left-hand tremor "for several years" and that Plaintiff worked successfully with these conditions previously. AR 3904. Dr. Norris noted how Dr. Reif was treating these issues "conservatively" and how Dr. Goldman was actually encouraging Plaintiff to resume light physical activity. AR 3903. Dr. Norris properly concluded these conditions did not preclude him from performing occupational duties. AR 3905.

Dr. Norris also considered Plaintiff's history of depression, even though Plaintiff never claimed he was disabled from this condition. AR 3851. Dr. Norris noted that Plaintiff had a recent normal mental status finding, a history of a low intensity of psychiatric treatments, and that no physician was opining that Plaintiff had restrictions and limitations to perform the occupation due to a mental condition. *Id.* Dr. Norris properly concluded Plaintiff had no mental impairment precluding him from performing his occupation. *Id.*

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 13
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Dr. Norris also evaluated Plaintiff's sleep disorder and obstructive sleep apnea (OSA). AR 3903. He concluded there was no medical evidence to substantiate clinically significant impairment/fatigue from OSA because Plaintiff had not attributed his fatigue to this condition, Plaintiff refused to use a CPAP machine prescribed for him, and Plaintiff chose not to seek additional recommended sleep therapies. AR 3905. Dr. Norris concluded, after reviewing all of the records, that Plaintiff had not produced evidence of restrictions and limitations that rendered him unable to perform the occupation. AR 3905. Other reviewers made similar conclusions. *See also* M. Maxell review (AR 3880-3888) and S. Pendleton review (AR 3835-3839).

Based upon these multiple, thorough reviews of the entire record Unum correctly determined that Plaintiff had not satisfied his burden to prove he was totally disabled under the terms of the policy. AR 1211-1225 (Unum's First Determination Letter); 1263-1268 (Unum's Second Determination Letter; 3968-3977 (Unum's Appeal Determination Letter).

## III. <u>ARGUMENT</u>

### A. Standard of Review.

With *de novo* review, Plaintiff carries the burden of proof to show that he is totally disabled under the policy definition. *See Muniz v. Amec Const. Mgmt. Inc.*, 623 F.3d 1290, 1294-96 (9th Cir. 2010). Plaintiff cannot establish "total disability" under the policy merely with complaints of fatigue or pain, or by introducing a particular diagnosis. Rather, the policy prescribes a functional test for determining whether the insured is "totally disabled." Under such a functional test, the Ninth Circuit has explained that: "[t]he mere existence of an impairment is insufficient proof of disability. A claimant bears the burden of proving that an impairment is disabling." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Seleine v. Fluor Corp. LTD Plan*, 598 F.Supp.2d 1090, 1102 (C.D. Cal. 2009), *aff'd,* 409 F. App'x 99 (9th Cir. 2010) (claimant's attempts to elevate notes of a patient's self-reported pain to the status of "findings" is inappropriate).

The Court should not accept Plaintiff's subjective, self-reported complaints at face value, especially when Plaintiff is not a good historian and every self-reported symptom that can be tested has been roundly contradicted by medical testing. In *Boardman v. Prudential Ins. Co. of Am.*, 337

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO FRCP 52(a) - 14
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

F.3d 9, 16-17 (1st Cir. 2003), the First Circuit upheld the insurer's decision that an insured was not disabled due to fibromyalgia and chronic fatigue because the insured failed to provide sufficient proof of her claimed functional limitations. The court observed that, although "*the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis.*" *Id.* at 17, n. 5 (emphasis added).  Because Boardman never presented objective analysis of her limitations, but only her self-reports and treating physician opinions based on those self-reports, she was not entitled to recover benefits under the disability plan. *Id.* at 17.

Plaintiff's self-report alone, including conclusory disability certifications adopting Plaintiff's self-report, cannot meet Plaintiff's burden of proof.  Courts recognize the inherent problems in adopting a standard that would require insurers to pay benefits based on a claimant's subjective symptoms alone. *See e.g.*, *Langlois v. Metro. Life Ins. Co.*, 2012 WL 1910020, at *14 (N.D. Cal. May 24, 2012) ("subjective evidence of a disabling condition is inherently less reliable than objective evidence"); *Martucci v. Hartford Life & Accident Ins. Co.*, 863 F.Supp.2d 269, 278 (S.D.N.Y. 2012) ("To force administrators to accept the subjective self-assessment of employees at face value, would invite fraud and abuse upon the claims administration process.")

**B.    Plaintiff Has Failed to Meet His Burden of Establishing That He Is Disabled Under the Terms of the Policy.**

Plaintiff's Motion briefly glosses over the legal and factual basis for establishing disability. *See* Dkt. 26 at 17-18 (Section III(A)). This terse recitation of Plaintiff's self-reported symptoms fails to substantiate Plaintiff's claim with medical evidence and fails in meeting his burden of proof.

**First,** every single symptom or "measurement" contained in Section III(A) is self-reported. Plaintiff's Motion confuses the actual facts using imprecise terminology, stating that Plaintiff was "diagnosed" or that "[a]ll specialists *observed* severe symptoms" or that "Dr. Kober repeatedly *confirmed*" the symptoms.  *See* Dkt. #26 at 17-18 (Section III(A)) (emphasis added). Plaintiff creates the false impression that physicians actually observed that he is "still having [daily] fever up to 104°[F]" or "his processing speed is affected" or "[i]t is taking him 2 hours to compose a

straightforward 4 paragraph document" or that he has "no stamina to work longer than 15 minutes" or he has "cognitive impairment (concentration, word-finding, memory, and learning deficits)" *Id.* (citing AR 45, 1149, 1248, 1633). These statements are *not* clinical observations or measurements as Plaintiff represents to the Court, but merely recordings of Plaintiff's self-reporting. Plaintiff's symptoms were never measured or observed by his physicians, including those that would be measurable *and* some were actually measured normal/negative. Plaintiff really stretches to identify objective medical evidence of symptoms or diagnosis and is affirmatively disproven by medical evidence cited above.

**Second,** courts repeatedly recognize that a claimant's subjective reports do <u>not</u> establish disability where other evidence in the record supports a finding that the claimant is able to work. *Western v. Unum Life Ins. Co.*, 2018 WL 6071090 at *11 (C.D. Cal. July 7, 2018) ("'A finding of disability based on mere subjective complaints would open the Plan up to malingering and would greatly hamper [the insurance company] from exercising its fiduciary role of scrutinizing requests for benefits.'"), *aff'd*, 796 F. App'x 154 (9th Cir. 2020) (quoting *Bratton v. Metropolitan Life Ins. Co.*, 439 F.Supp.2d 1039, 1052 (C.D. Cal. 2006)); *Seleine*, 598 F.Supp.2d. at 1101-02 ("Seleine's subjective complaints of pain… were subject to verification by objective medical evidence. LINA was under no obligation to accept them at face value"); *Langlois*, 2012 WL 1910020, at *14 ("subjective evidence of a disabling condition is inherently less reliable than objective evidence"); *Savafi v. SBC Disability Income Plan*, 493 F.Supp.2d 1107, 1118 (C.D. Cal. 2007).

**Third,** in an odd paradox, Plaintiff's Motion chastises Unum for considering objective medical evidence in assessing the claim, citing *Friedrich*, 181 F.3d at 1112. Plaintiff's citation to *Freidrich* must be a mistake. The Court in *Freidrich* specifically noted that the plaintiff in *Freidrich* presented "*objective medical evidence to support his treating physicians' diagnoses that he suffers from disabling CFS. Specifically, Dr. Isaac Silberman's testimony explained the objective medical tests indicating CFS found in Friedrich's medical records, the EEGs (electroencephalograms) he performed, and Friedrich's symptoms. Dr. Sheila Bastien described*

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 16
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*in her testimony neuropsychological tests she performed on Friedrich specifically designed to measure cognitive functions which produced results consistent with both immune deficiencies and CFS.*" *Id.* Of course, unlike the plaintiff in *Freidrich*, Plaintiff presents this court with no EEG or neuropsychological testing showing cognitive impairment, a required symptom for a ME/CFS diagnosis.

**Fourth,** regardless of what the diagnosis is, Unum focused on Plaintiff's actual alleged symptoms of impairment. Plaintiff failed in his burden of proof because he did not present objective evidence of impairment from whatever medical condition he may have. *Matthews,* 10 F.3d at 680. Rather, the good news is that testing by Plaintiff's treaters conclusively showed no "compelling evidence for Mild Cognitive Impairment." AR 3851. In *Lukianczyk v. Unum Life Ins. Co. of Am.*, the Court stated "while there is no test for chronic fatigue syndrome, 'there are a variety of tests and evaluations designed to measure an individual's cognitive, psychological, and physical functioning.'" 505 F.Supp.3d 1033, 1044 (E.D. Cal. 2020) (quoting *Holifield v. Unum Life Ins. Co. of Am.*, 640 F.Supp.2d 1224, 1237 (C.D. Cal. 2009)).

In *Lukianczyk*, Plaintiff claimed that CFS prevented her from performing her job. 505 F.Supp.3d at 1045. But the Court noted that all of Plaintiff's testing was actually normal—"Dr. Malik performed a neurological exam on plaintiff and stated that she was awake, alert, and oriented, and that her memory was intact, and that her attention span, concentration, language and fund of knowledge were sufficient," as well as her sleep apnea/quality score being normal. *Id.* The Court concluded that "the totality of the objective medical evidence is insufficient to persuade the court that plaintiff's condition rendered her disabled under the terms of the Policy." *Id.*

Similarly, in *Siebert v. Standard Ins. Co. LTD Policy*, the Court disregarded a treating physician's CFS diagnosis when objective testing actually demonstrated normal cognitive function: "After conducting a face-to-face interview and reviewing Siebert's medical records, Dr. Hochman found Siebert's reported limitations 'unreasonable' because his testing showed no deficit in Siebert's concentration and memory, and therefore he concluded that Siebert's physical complaints were most likely symptoms of depression." 220 F.Supp.2d 1128, 1138 (C.D. Cal.

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 17
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

2002); *see also Western,* 2018 WL 6071090 at *12 (In ME/CFS case, Unum properly denied disability benefits after doctors reviewed "all the available medical evidence . . . [and] concluded that Plaintiff was not impaired by any cognitive or physical condition caused by CFS or otherwise . . . ." The Court explained: "*Plaintiff's subjective reports of cognitive impairment do <u>not</u> establish disability under an ERISA plan.*") (emphasis added).

Certainly, if neuropsychological testing showing cognitive impairment can be used to support a finding of impairment from CFS sufficient to award disability benefits, then testing showing no clinically significant impairment should justify a finding of no impairment and benefit denial. *Compare Friedrich*, 181 F.3d at 1111 (Court concluded neuropsychological testing showing cognitive impairment established objective basis for grant of disability benefit).

Here, Dr. Winnett administered at least nineteen (19) different tests, including the Wechsler Adult Intelligence Scale, the Minnesota Multiphasic Personality Inventory (MMPI) and many other tests and concluded: "*<u>I am not seeing any</u> compelling evidence for Mild Cognitive Impairment at this time.*" AR 2318-9 (emphasis added). However, Dr. Winnett did note how Plaintiff's MMPI test results showed some embellished symptoms, and that Plaintiff "*had a prominent <u>over-reporting</u> response style for both physical and cognitive complaints[.]"* AR 2317 (emphasis added). Dr. Winnett noted that this "overreporting" of physical and cognitive complaints is "infrequent in medical patient populations." AR 2319. Dr. Winnett also examined all of Plaintiff's other tests. AR 2315-7 (*e.g.,* normal neuropsychological testing, normal EEG, normal MRI brain scan). Plaintiff's claim that this testing reveals any clinically significant cognitive abnormalities ignores Dr. Winnett's opinions. *Compare* Dkt #26 at 12 *with* AR 2318-9 (Winnett findings).

Dr. Reif's objective psychological testing also confirmed Plaintiff had no cognitive impairment and that he was "*cognitively normal . . . ."* AR 1528. Plaintiff mistakenly asserts that Plaintiff's Montreal Cognitive Assessment score of 26/30 showed impairment. But a score of 26/30 "*is considered normal.*" Dkt. #26 at 10-11 (AR 1540); *Berryhill*, 2017 WL7052256, at *5, n. 1 ("A score of 26/30 [on the Montreal Cognitive Assessment] is considered normal.").

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 18
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Accordingly, Plaintiff's citations to *Tam v. First Unum Life Ins. Co.*, 491 F. Supp. 3d 698, 711 (C.D. Cal. 2020), and *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 678 (9th Cir. 2011) are unavailing because these CFS cases involve only subjective evidence, where objective evidence was unavailable.  Drs. Reif and Winnett present the objective evidence that Plaintiff has no cognitive impairment. Ample judicial precedent justifies denial of Plaintiff's LTD benefits for CFS claims when objective testing is available and disproves diagnostic criteria or is inconsistent with self-reported symptoms.

Besides that, every self-reported symptom by Plaintiff *that could be tested* was read as normal. For example, while Plaintiff claims he had daily fevers, twelve (12) fever measurements by doctors all were normal. AR 589-617, 1332-1341, 1389-1392, 1393-1396, 1397-1410, 1550-1554, 3747-3750; *compare* AR 2521 (assertion that Plaintiff had "daily fevers.") Tests on oxygen saturation, to validate Plaintiff's claimed difficulty breathing, also always read normal.  *See e.g.*, AR 589-592. Cognitive testing to assess Plaintiff's self-reported brain fog and cognitive impairment were normal. AR 2310-2320, 1527-1532. Four (4) COVID-19 tests, to assess Plaintiff's claim of COVID-19 all read negative.  Dozens of blood tests, CT, PET, and brain scans, and many other diagnostic tests all read normal. *See e.g.*, AR 911-917 (6/3/20 visit - full blood panel normal and CT scans normal), 596-597 (6/11/20 visit – negative covid tests and normal blood test results), 1450-1461 (8/25/20 visit – blood tests normal, brain scans normal, physical exam normal).

Moreover, during Plaintiff's physical exams most doctors reported Plaintiff to appear normal, with regular strength, no weakness, no discomfort, no acute distress, without fevers, and cognitively normal. Tests and exams, along with observations that Plaintiff's reported alleged symptoms were inconsistent with his underlying medical records, properly served as the medical basis for many expert opinions which determined Plaintiff had not shown sufficient impairment to render him unable to perform his occupation. This, in turn, justified Unum's decision to deny LTD benefits on appeal.

Plaintiff has simply failed in his burden to prove that he is disabled under the policy

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 19
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

because: **(1)** his physicians' faulty opinions are based exclusively on Plaintiff's self-report, and some of Plaintiff's self-reported symptoms and diagnoses have been *affirmatively disproven* through objective testing. As in *Boardman,* and in *Siebert* and *Lukianczyk*, Plaintiff's normal cognitive testing (plus Plaintiff's other normal/negative test results and normal physical exam findings) affirmatively disprove a CFS diagnosis or Plaintiff's claim that he is too impaired to perform the occupation; **(2)** Plaintiff's treaters did not point to any specific observed symptom or finding that explained what job functions Plaintiff could not perform; **(3)** Plaintiff never presented objective analysis of his limitations, *Boardman, supra*; and **(4)** medical and vocational experts and treaters concluded that the medical records did not establish the presence of a severe or significant impairment.

C. **Unum's Medical, Occupational and Vocational Reviewers Holistically Reviewed Plaintiff's Medical Records, Examinations, and Test Results, and an Independent Medical Examination was Unnecessary and Not Required.[3]**

Plaintiff mistakenly contends Unum should have conducted an independent medical exam (IME) in addition to the independent review of medical records. **First,** "[t]here is no requirement in ERISA that the claims administrator order an in-person independent medical examination of a claimant," and "reviews of medical records are an acceptable basis of an administrator's determination." *Constantino v. Aetna Life Ins. Co.*, 2014 WL 5023222, at *7 (C.D. Cal. Oct. 8, 2014) (citation omitted); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003) ("courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician"); *Inciong v. Fort Dearborn Life Ins. Co.*, 570 F. App'x

---

[3] Allegations in footnote 8 of Plaintiff's Motion are disappointing and unfair. Dkt. 26, at 15. **First,** defense counsel properly asserted privilege on in-house counsel Steve Walker's exchange with claims professional Kristine Igitkhanyan. Defense counsel worked collaboratively to resolve Plaintiff counsel's questions about these redactions in the administrative record: Unum simply produced the privileged records. **Second,** the whole point of Walker's exchange was to correct a factual error in the initial draft letter. *See, e.g.,* AR 1202-3. The initial draft letter inaccurately stated that medical reviews *had* determined Plaintiff was "disabled" from April 21, to June 2, 2020. But <u>no</u> medical reviews by Unum had determined impairment sufficient to establish disability. *See* AR 1036-1040 (L. Cygan N.P. on 9/4/20);   1183-1185 (M. Lundquist M.D. on 9/10/20). Even Plaintiff apparently concedes that this so-called "alteration" actually corrected this factual inaccuracy because, by this date *"Unum did not make a disability determination for the period." See* Dkt. # 30 at 1 (emphasis added). **Third,** this record does not matter, anyway, because any purported disability from April 21 to June 2, 2020 would not satisfy Plaintiff's burden to establish that he was "continuously disabled through the [90] day elimination period." AR 105.

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 20
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

724, 726 (9th Cir. 2014) (ERISA does not require an independent medical examination); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1192 (C.D. Cal. 2008).

**Second,** Plaintiff's file-review argument fails because, unlike Plaintiff's treaters, Unum's medical, occupational and vocational reviewers evaluated a comprehensive record, including all notes, tests and neuropsychological testing in a detailed, careful and well-reasoned manner. "'[A] paper review by a physician retained by the Plan administrator may be more reliable than the opinion of a treating physician." *Shaw v. Life Ins. Co. of N. Am.,* 144 F. Supp. 3d 1114, 1130 (C.D. Cal. 2015); *Pearson v. Aetna Life Ins. Co.*, 2016 WL 2745299, at *6 (W.D. Wash. May 10, 2016) (Plan doctors "took a more holistic approach to reviewing [plaintiff's] records and condition. Those doctors had the benefit of input from [a review of records from other doctors] as well as objective outside information.") Moreover, Unum's retained experts sought to confer directly with Plaintiff's treating physicians. *See, e.g.,* AR 1082-1084, 1151-1153.

Any such separate IME would have been superfluous. IMEs are unnecessary where, as here, Plaintiff's doctors seemed to simply "echo" Plaintiff's self-reports. *See Judge v. Metropolitan Life Ins. Co.*, 710 F.3d 651, 663 (2013) (IMEs do not need to be considered when file reviewers "simply echo those of [claimant's] own doctors, make note where the reports lack objective medical evidence in support of the boxes checked, and point out the internal inconsistencies.") Exams by Plaintiff's treaters, usually performed by video, essentially reiterate "normal" observations anyway. *See e.g.,* AR 3886-3887 (summary of over 10 "normal" physical exams); 1434, 1391. Unum's reviewing experts relied on the entire record, including objective evidence (examinations and testing) in finding that Plaintiff was not disabled from performing his regular occupation.

**D.    Unum Properly Considered Plaintiff's Occupation and Whether He Was Totally Disabled from Performing the Occupation.**

Plaintiff's Motion ignores the specific language in the policy regarding Total Disability when he asserts that Unum should have considered Plaintiff's specific job duties, including the specific attributes and demands of Plaintiff's job with Schwabe. Dkt. #26 at 22. The Regular

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO FRCP 52(a) - 21
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Occupation policy definition (quoted above) requires a review of the "*occupation as it is normally performed in the national economy, <u>instead of how the work tasks are performed for a specific employer or at a specific location.</u>*" AR 125 (emphasis added); *supra* at 4.

This was explained in *Holden v. Unum Life Ins. Co. of Am.*, 2021 WL 2836624, at *10 (6th Cir. July 8, 2021). There, the Sixth Circuit agreed that the specific law firm job duties are *not* relevant or determinative under the "national economy" standard:

> Further, Unum's plan defines long-term disability during the relevant period (the first 36 months of disability) as being limited from performing the material and substantial duties of the insured's 'regular occupation,' which Unum describes as the 'occupation as it is normally performed in the national economy,' rather than 'how the work tasks are performed for a specific employer or at a specific location.' So, what mattered to Unum's determination—per the clear language of its plan—was not whether Holden was capable of performing her job at Williams & Connolly but rather whether Holden could have performed a similar job for another employer at another location. *Id.*

Here, medical, occupational and vocational experts retained by Unum specifically addressed and accounted for Plaintiff's self-reported symptoms in the context of the occupational duties and physical demands of Plaintiff's occupation in the "*national economy.*" AR 1003-1005. As summarized above, experts found Plaintiff's self-reported symptoms inconsistent with his underlying medical records. And the experts, even including some of Plaintiff's doctors, determined from neuropsychological testing that Plaintiff had no clinically significant cognitive impairment that significantly impacted his daily functioning. *See, e.g.,* AR 1212-1214; AR 3970, 3972, 3975. Vocational rehabilitation expert, Karen Moore, also correctly determined, after reviewing the complete file, that "the occupation in the national economy is consistent with Attorney eDOT 110.117-022." AR 1003-1005. Under this standard the position is sedentary. *Id.* Unum correctly assessed Plaintiff's ability to perform the sedentary occupation of lawyer (under national economy standards) during its medical, occupational and vocational assessment.

Plaintiff's assertions about his job-specific duties are irrelevant and immaterial to whether he can perform job functions of an attorney as viewed in the "national economy." And reliance on the report by Barbara Beach is a mistake because Ms. Beach never makes an assessment of the position in the context of the national economy. AR 3788-3789.

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 22
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**E.      Unum Properly Denied Plaintiff's Benefits After Considering Medical, Occupational and Vocational Information Plus Plaintiff's Witness Statements, His Own Symptom/Temperature Log, and Research Articles.**

Plaintiff's Motion speculates that Unum ignored his subjective descriptions/recordings and six witness statements.  That is not true. The record shows that Unum considered the entire record, including Plaintiff's temperature and symptoms log (AR 3972) and the personal narratives and witness statements submitted by Plaintiff.  AR 3974.  Unum considered the many symptoms and assertions that Plaintiff made in the context of a holistic review of the entire record.  *See* AR 1151-1157 (Dr. Kim's First Review); 1183-1187, 3386-3387 (Dr. Lundquist's First Review); 1211-1225 (Unum's First Determination Letter); 1250-1252 (Dr. Kim's Second Review); 1254-1259 (Dr. Lundquist's Second Review; 1263-1268 (Unum's Second Determination Letter); 3516-3524, 3880-3888 (M. Maxell review); 3832-3839 (S. Pendleton review); 3845-3853, 3898-3906 (Dr. Norris' review); 3968-3977 (Unum's Appeal Determination Letter).

Having considered all this information, Plaintiff's reliance on his personal narratives or statements of friends and colleagues are unavailing and unpersuasive in light of objective medical evidence to the contrary.  *See Shaw*, 144 F.Supp.3d at 1135-1136 (Plaintiff submitted "letters [that] paint a more dramatic picture of Shaw's condition than the medical records, and describe the impact Shaw's mental illness has had on her personality and lifestyle. While the court does not doubt that Shaw struggles with symptoms of her condition, ultimately it cannot rely on these narratives to find that Shaw is entitled to disability benefits."); *Lukianczyk*, 505 F.Supp.3d at 1049 ("narratives written by plaintiff and her husband do not compensate for the fact that there is insufficient medical evidence of disability . . . .")

Here, Plaintiff's personal narratives fail to overcome objective medical evidence to the contrary. Moreover, these narratives are unreliable and self-serving, again based on his own self-reports. AR 1635-1640, 3802-3805, 3964-3965 (Plaintiff's narratives).  Plaintiff's wife's and son's narrative are conflicted because each has a personal interest in the outcome of Plaintiff's claim. AR 1874-1875, 3806. Plaintiff's son's narrative is admittedly not based on personal observations, except in a few isolated instances. AR 3958-3959. Brenna Legaard and William Gould previously

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO FRCP 52(a) - 23
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

worked with Plaintiff and their statements are not based on any personal observations, except Plaintiff's self-reporting. AR 1871-1873; AR 3960-3961. Robert Siegel, a personal friend, makes statements based on Plaintiff's self-reports, and his statement lacks foundation and contains significant speculation. AR 3962-3963. These statements are unreliable. As in *Shaw* and *Lukianczyk*, narratives of non-medical providers should be given little weight in light of the medical evidence that roundly disproves Plaintiff's impairment, such as his lack of fevers, cognitive impairment, and COVID-19.

## IV.  CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's Motion for Judgment, grant Unum's Motion for Judgment, and enter judgment for Unum, and award Unum any relief that the Court deems just and proper.

DATED: March 4, 2022

LANE POWELL PC

By:    *s/ D. Michael Reilly*
D. Michael Reilly, WSBA No. 14674
Riley R. Moyer, WSBA No. 56243
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
reillym@lanepowell.com
moyerr@lanepowell.com
Attorneys for Defendant Unum Life Insurance
Company of America

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT PURSUANT TO FRCP
52(a) - 24
CASE NO. 2:21-cv-00980-TL
8851040.5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107